Troy Wayne CROSS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–02–00225–CR.

Court of Appeals of Texas, Eastland.

July 17, 2003.

Gary M. Brown, Abilene, for appellant.

James Eidson, Dist. Atty., Patricia Dyer, Asst., Appellate Section Criminal Dist. Atty's Office, Abilene, for appellee.

Panel consists of WRIGHT, J., and McCALL, J., and AUSTIN McCLOUD, S.J.*

Opinion

AUSTIN McCLOUD, Senior Justice (Retired).

The jury found Troy Wayne Cross guilty in a multiple count indictment of three offenses: (1) burglary of a habitation with intent to commit aggravated sexual assault; (2) aggravated sexual assault; and (3) aggravated assault. The jury further found that the enhancement allegations in the indictment were true and that appellant used and exhibited a deadly weapon, a knife, while committing each offense. The jury assessed appellant's punishment at imprisonment for life for each conviction and, in addition to imprisonment, a $10,000 fine for the aggravated assault conviction.

We affirm the trial court's judgments as to the aggravated sexual assault and aggravated assault offenses. We reverse the trial court's judgment as to the conviction for burglary with intent to commit aggravated sexual assault.

The record shows that appellant unlawfully entered the victim's apartment and, while using a knife, stabbed and sexually assaulted the victim. The sufficiency of the evidence is not challenged.

Appellant contends in his first issue that the trial court erred in denying his motion to suppress and in permitting the State to introduce into evidence two written statements signed by appellant. The first statement is dated November 23, 2001, and the second statement is dated November

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

26, 2001. Both statements were made to Detective Joe Tauer.

Appellant argues that both statements were inadmissible because they were made after he had invoked his right to counsel. Counsel had not been provided, and counsel was not present when appellant made and signed the two statements. See *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The State responds that appellant did not make a clear and unambiguous request for counsel and, further, that appellant waived his right to counsel because appellant, not Detective Tauer, "initiated" the discussion regarding the facts surrounding the investigation. Following a pretrial suppression hearing, the trial court dictated into the record the court's express findings that both statements were freely and voluntarily given and that appellant had waived his right to counsel.[1]

The victim testified that, around 5:00 a.m. on November 23, 2001, following an all-night beer drinking party at her apartment, she heard a knock at her door. As the victim went to the door to unlock it, appellant unlocked the door with a key and broke the door chain. Appellant grabbed the victim and stabbed her in the back with a knife that belonged to the victim. Appellant tied the victim's hands behind her back and then forced the victim to perform oral sex on him. Appellant was in the victim's apartment for approximately one hour. At some point, appellant bit the victim. Appellant was unable to obtain an erection. The victim testified that, while appellant was forcing her to perform oral sex, he told her several times that if she tried anything he would kill her.

The medical doctor who treated the victim for the stab wound testified that the knife wound could have resulted in serious bodily harm or death.

Chester Wallace testified that appellant came to his apartment, which was in the same apartment complex as the victim's apartment, at around 7 or 8 a.m. on November 23. Appellant was in the apartment about 10 minutes before Wallace heard sirens and observed several police officers at the apartment complex. Appellant left Wallace's apartment. Shortly thereafter, police officers came to the apartment and, with Wallace's permission, searched the apartment. The keys to the victim's apartment and the knife that was used to stab the victim were found by the police under a couch in Wallace's apartment. The DNA evidence showed that the victim's blood was found on the sweat pants worn by appellant at the time of his arrest.

In the statement dated November 23, 2001, appellant stated that, on the night of November 22, 2001, he and two other males were drinking beer in an apartment complex parking lot when they met two females.[2] Appellant said that the females were a "mother" and "daughter" who were both drunk. The daughter was about 19 or 20 years old. Later that night, between 10:00 p.m. and 12:00 a.m., appellant went to the females' apartment. The people there were sitting around drinking beer and smoking dope. The daughter wanted to give appellant "head" for some "rock," so appellant let her. Appellant stated that

---

1. Appellant does not complain that the trial court failed to comply with TEX. CODE CRIM. PRO. ANN. art. 38.22 (Vernon 1979 & Pocket Part 2003). See *Blount v. State*, 64 S.W.3d 451, 457 (Tex.App.-Texarkana 2001, no pet'n).

2. The victim testified that the other female who was present in her apartment during the party was her 19-year-old friend. The victim stated that she, at times, told people that the friend was her "daughter."

he gave her a "hit" but that he was unable to obtain an erection. Appellant stated that he passed out on the couch and that, when he woke up, everybody was gone. He was awakened by the "mother" kicking him. Appellant stated that he and the "mother" were hitting each other and that he "might have stabbed her," but he did not know where the "knife came from." Appellant stated that he got mad and: "[W]hat happened after that I don't know." Appellant stated that he left the apartment and went to "Chester's" apartment. When he saw police officers arriving at the apartment complex, appellant got "scared" and "took off." Appellant stated that he "didn't rape her" and that he "didn't break in."

On November 26, 2001, three days after the first statement was given by appellant to Detective Tauer, appellant signed a second statement which was also given to Detective Tauer. In that statement, appellant said that, while he was at the party at the apartment, he found the keys to the apartment on a couch and took them. He said that he took the keys because he intended to return to the apartment and steal the stereo. He further stated that, around 5:00 or 6:00 a.m. on November 23, 2001, he went to the apartment and unlocked the door. The door chain was latched, and he pushed the door in. He told the victim that he wanted her property; and, when she put up a fight, he might have "bit" her. Appellant said that he went to the apartment to rob the victim and that he was not thinking straight because he had been drinking and was on "crack" and "speed."

 The court in *McCarthy v. State*, 65 S.W.3d 47, 51 (Tex.Cr.App.2001), recently stated the appropriate rules to be followed:

Once a suspect has invoked the right to counsel during questioning by law enforcement, the Fifth Amendment right to counsel has been invoked and all interrogation by the police must cease until counsel is provided or the suspect reinitiates conversation.

\* \* \*

[T]he *Edwards [v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)] rule acts as a "clear and unequivocal" guideline to law enforcement precisely because it is "relatively rigid." *See Arizona v. Roberson,* 486 U.S. 675, 681, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). When a person subjected to custodial interrogation unambiguously invokes the right to counsel, all questioning must cease. Interrogation may not be reinitiated by the police at any time or in any manner unless the person has consulted counsel.

The court qualified the above-quoted language by stating in Footnote No. 6: "Of course, if the arrestee reinitiates the conversation, the *Edwards* rule is satisfied." *McCarthy v. State,* supra at 51 n. 6.

 At about 8:00 a.m. on November 23, 2001, Abilene Patrol Sergeant Jmeyer Barbian, who was searching for the sexual assault suspect, discovered appellant hiding in the back of a pickup. Sergeant Barbian testified at the suppression hearing that he Mirandized[3] appellant and that, as he gave appellant the last of his *Miranda* warnings, appellant said: "I am not saying anything until I get my lawyer." Appellant was then transferred to the Law Enforcement Center. We hold that appellant clearly invoked his right to counsel under the Fifth Amendment to the U.S. Constitution. *Miranda v. Arizona,* supra;

**3.** See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Lucas v. State,* 791 S.W.2d 35 (Tex.Cr.App. 1989).

We now turn to the issue of who "initiated" the conversation between appellant and Detective Tauer that led to the statement on November 23. Detective Tauer testified at the suppression hearing that he first met appellant around 9:00 a.m. on November 23. The victim was at the hospital, and a "one-on-one" or "show up" was needed. Detective Tauer and other officers transported appellant to the hospital where the victim identified appellant as the person who had committed the sexual assault. Appellant was then transferred back to the Law Enforcement Center. Detective Tauer stated that he read appellant his *Miranda* rights and told appellant he was going to get some "personal" information from him. Detective Tauer testified that he told appellant that he was not going to question him because he had been told that appellant had invoked his right to an attorney. Detective Tauer stated that appellant "got upset" and told the detective that he "didn't want to talk to the patrol officer" but that he did want "to talk to a detective." The detective stated that appellant was "visibly upset" and was "mad" because Detective Tauer was not going to talk to him. The detective then telephoned his supervisor; the supervisor advised Detective Tauer that appellant could "invoke his rights to an attorney" and that a person can also "uninvoke his rights." The supervisor advised Detective Tauer that, if appellant wanted to talk to Detective Tauer, then Detective Tauer should talk with him. Detective Tauer testified that he was "absolutely" sure that appellant was the one who initiated the questioning. On cross-examination at the suppression hearing, the prosecutor asked appellant the following question regarding his conversation with Detective Tauer: "[H]e wasn't going to talk to you and you wanted to tell him what happened, isn't that correct." Appellant answered: "I can't say yes or no to that."

In *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court said:

> We think the Oregon Court of Appeals misapprehended the test laid down in *Edwards.* We did not there hold that the "initiation" of a conversation by a defendant such as respondent would amount to a waiver of a previously invoked right to counsel; we held that after the right to counsel had been asserted by an accused, further interrogation of the accused should not take place "unless the accused himself initiates further communications, exchanges, or conversations with the police."

\* \* \*

> But even if a conversation taking place after the accused has "expressed his desire to deal with the police only through counsel," is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.

At a suppression hearing, the trial court is the trier of fact; it assesses the witnesses' credibility and the weight to be given their testimony. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Cr.App.1999). As long as the trial court's findings are supported by the record, we afford almost total deference to its findings of historical fact. Furthermore, we defer to a trial court's application of law to fact rulings if they turn on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85 (Tex.Cr.App.1997).

The Court in *Bradshaw* held that the defendant "initiated" further "conversations" when the defendant asked an officer: "Well, what is going to happen to me now?" When discussing the meaning of "initiate," the Court said:

Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation.

■ We hold that appellant initiated further communication with Detective Tauer regarding the subject matter of the investigation. Appellant's remarks represented a desire on appellant's part to open up a more generalized discussion with Detective Tauer relating directly or indirectly to the investigation. Detective Tauer did not initiate further conversation with appellant when the detective asked appellant routine personal questions; the detective told appellant that he would not be asking appellant any questions concerning the incident being investigated. The next inquiry is whether a valid waiver of the right to counsel occurred after appellant initiated further conversation regarding the facts surrounding the incident. The detective stated that, before he gave appellant his *Miranda* warnings, appellant had recited all of the *Miranda* rights to the detective except for the right to terminate the interview. Detective Tauer testified that, before he interrogated appellant, he carefully went over each of the *Miranda* warnings with appellant.

The preprinted part of the written statement contained the *Miranda* warnings. The statement expressly states that appellant was warned by the person to whom the statement was made (Detective Tauer); that appellant had the right to have a lawyer present to advise him prior to and during any questioning; and that, if appellant was unable to employ a lawyer, appellant had the right to have a lawyer appointed to advise him prior to and during any questioning. Detective Tauer testified that appellant read the rights "out loud" back to the detective before appellant signed the statement. After reviewing the totality of the circumstances, we hold that appellant knowingly and voluntarily waived his right to counsel. The trial court did not err in denying appellant's motion to suppress and in permitting the State to introduce into evidence appellant's first statement, the one which is dated November 23, 2001. *Oregon v. Bradshaw,* supra; *Janecka v. State,* 739 S.W.2d 813, 829 (Tex.Cr.App.1987).

■ We now turn to appellant's second written statement. Detective Tauer interviewed the victim on November 26 and learned that some information she gave him did not match up with what appellant had said in his first statement. The detective contacted appellant and told him that some of the facts were not matching up. The detective gave appellant the *Miranda* warnings, and appellant revised or amended his November 23 statement. The record shows that the November 26 statement resulted from appellant responding to "further police-initiated custodial interrogation," and a valid waiver of his right to counsel cannot be established by a showing that appellant was advised of his right to counsel. *Oregon v. Bradshaw,* supra. There was no evidence presented at the suppression hearing that appellant initiated "further communications, exchanges, or conversations" with Detective Tauer at the time of the second statement. To the contrary, the evidence clearly shows that the further interrogation was initiated by

Detective Tauer. Therefore, the State has failed to show that the State complied with the rule in *Edwards*. We hold that the trial court erred in admitting into evidence the statement dated November 26, 2001. See *Herron v. State*, 86 S.W.3d 621 (Tex. Cr.App.2002).

■ We now determine if the error in admitting the November 26 statement, which was constitutional error, did not, beyond a reasonable doubt, contribute to the conviction or punishment. TEX. R.APP.P. 44.2(a). In the second statement, appellant stated that, while at the party, he took the keys to the apartment and that he used the keys to enter the apartment. Appellant admitted that he knowingly and intentionally entered the victim's apartment without the effective consent of the victim. This was an admission of an essential element of the offense of burglary of a habitation with intent to commit sexual assault. In the first statement, appellant stated that he passed out on the couch at the party. At trial, the victim identified appellant as the person who unlocked her door and broke the door chain. The physical evidence at trial supported the victim's testimony as to how appellant entered the apartment. The victim testified that she thought appellant was smoking crack at the party. She testified that she saw appellant crush up a blue pill in the bathroom. However, on cross-examination, the victim admitted that, in her statement given to the authorities on November 23 and signed on November 26 after seeing appellant at the hospital, she stated that she did not remember seeing appellant in her apartment at the party. The victim testified that she was "pretty intoxicated" at the time of the sexual assault and that she was pretty sure that she did not smoke "crack" at the party. We cannot conclude, beyond a reasonable doubt, that the admission of appel-lant's unconstitutionally obtained November 26 statement did not contribute to the jury's verdict that appellant was guilty of burglary of a habitation with intent to commit sexual assault. We reverse the judgment of the trial court as to the conviction of burglary of a habitation with intent to commit sexual assault. See *McCarthy v. State*, supra.

■ We now consider whether the second statement contributed to the aggravated sexual assault conviction or the aggravated assault conviction. Appellant did not admit that he committed the aggravated sexual assault or the aggravated assault in the November 26 statement. In the first statement, which was admissible, appellant admitted that he was at the party and that, after the party, appellant was awakened by the "mother" kicking him. In the first statement, appellant said that he might have stabbed the victim. Appellant's attorney argued to the jury that the "whole case is about sexual assault." The defensive theory was that the victim had invented the sexual assault in order to collect damages against the owner of the apartment for failing to provide a proper lock for the door. We hold beyond a reasonable doubt that the introduction of the November 26 inadmissible statement did not contribute to the conviction or the punishment of either the aggravated sexual assault or the aggravated assault conviction. We affirm each of those judgments.

■ In his remaining issues, appellant challenges the imposition of the mandatory life sentences. During the punishment phase of the trial, the State introduced evidence showing that on April 17, 1989, appellant was convicted of "rape" in Oklahoma. Pursuant to TEX. PENAL CODE ANN. § 12.42 (Vernon 2003) the trial court instructed the jury that, if the jury found the Oklahoma rape conviction to be "true," the jury was to return a mandatory sen-

tence of life imprisonment as to the burglary of a habitation with intent to commit aggravated sexual assault and the aggravated sexual assault convictions.[4]

Section 12.42(c)(2) provides that a defendant convicted of aggravated sexual assault who has been previously convicted under the laws of another state containing "elements that are substantially similar to the elements" of the offense of sexual assault found in TEX. PENAL CODE ANN. § 21.11 (Vernon 2003) shall receive a punishment of mandatory life imprisonment. See Section 12.42(c)(2)(A) & (B) for its application to other listed offenses.

The trial court took judicial notice of the Oklahoma rape statute and held that the Oklahoma statute contained elements that were "substantially similar" to TEX. PENAL CODE ANN. § 22.011 (Vernon 2003) (Sexual Assault). Appellant objected to the court's jury instruction in the charge regarding mandatory life imprisonment because: (1) the Oklahoma rape conviction was not substantially similar to the Texas sexual assault offense listed in Section 22.011; (2) the jury should have determined, as opposed to the court, whether the Oklahoma offense and the Texas offense were substantially similar; and (3) the date of the Oklahoma offense was essential in determining if the statute contained substantially similar elements.

■■■ Statutory interpretation is a question of law to be determined by the trial court, not the jury. See *Kuhn v. State*, 45 S.W.3d 207, 209 (Tex.App.-Texarkana 2001, pet'n ref'd). We review the trial court's determination de novo. The Oklahoma "rape" statute, at the time of appellant's "conviction," contained "elements" that were substantially similar to elements

contained in the Texas "sexual assault" statute as defined in Section 22.011. The Oklahoma statute (rape) and the Texas statute (sexual assault) permit conviction where physical force or violence was used or where threatened fear or violence was used if the victim believed that the perpetrator had the present or apparent ability or power to execute the threat. See Section 22.011 and OKLA. STAT. ANN. tit. 21, § 1111 (West 2003).

■■■ Section 12.42(c)(2) provides in part:

A defendant shall be punished by imprisonment in the institutional division for life if:

(A) the defendant is convicted of an offense:

(i) under Section 22.021 or 22.011, Penal Code; and

(B) the defendant has been previously convicted of an offense:

(v) under the laws of another state containing elements that are substantially similar to the elements of an offense listed in Subparagraph (i), (ii), (iii), or (iv).

Section 22.011 is listed in Subparagraph (ii). The statute does not require that the facts and circumstances of the out-of-state offense be substantially similar to the facts and circumstances that would allow conviction under Section 22.011 before a court should impose a mandatory life sentence. We think that the State's failure to prove when the Oklahoma offense occurred did not prevent the application of Section 12.42(c)(2). We overrule appellant's issues relating to the imposition of the mandatory life sentence for the conviction of aggravated sexual assault.

---

**4.** Since we will reverse and remand the conviction for burglary of a habitation with intent to commit aggravated sexual assault, we need

not address appellant's remaining issues insofar as they relate to that conviction.

We affirm the trial court's judgments as to the aggravated sexual assault and the aggravated assault offenses. We reverse the trial court's judgment as to burglary with intent to commit aggravated sexual assault, and that offense is remanded to the trial court for a new trial.