IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1439-03






TROY WAYNE CROSS, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


TAYLOR COUNTY






 Cochran, J., delivered the opinion of the Court, joined by Keller, P.J.,
Meyers, Price, Womack, Johnson, Hervey, and Holcomb, JJ. Keasler, J.,
concurred.


O P I N I O N 



 In Edwards v. Arizona, (1) the Supreme Court held that once an accused person has
expressed his desire to deal with the police only through counsel, all custodial interrogation
must cease unless he initiates further communication. (2) In this case, appellant was arrested and
given his Miranda warnings. He immediately expressed his desire to deal with the police only
through counsel, but, before counsel was made available to him, appellant himself initiated
further communications with a different police officer, and, during the course of that
interview, made a written statement. Three days later, that same officer approached appellant,
again read him his Miranda rights which appellant waived, and obtained a second written
statement. 

 The issue in this case is one of first impression in this state: Did the police officer take
appellant's second statement in violation of the Edwards rule because he, the police officer,
initiated the second interview with appellant three days after appellant had initiated the first
interview? (3) We hold that when a suspect has invoked his right to counsel, but then voluntarily
reinitiates conversation with the police and expressly waives his right to counsel, the Edwards
rule has been satisfied. We conclude that, because the police in this case fully complied with
the Edwards requirements, the trial court properly admitted appellant's second written
statement into evidence. We reverse the judgment of the court of appeals which held that the
second statement was inadmissible because appellant did not himself re-initiate the second
interview as well as the first interview. (4)

I.



 Factual Background


 Appellant was charged with three offenses: (1) burglary of a habitation with intent to
commit aggravated sexual assault, (2) aggravated sexual assault, and (3) aggravated assault.

 At trial, the complainant testified that around 5:00 a.m., following an all-night party at
her apartment, she heard a knock on her door. As she went toward the door, appellant unlocked
the door with a key, broke the chain lock, and entered her apartment. He tied her up, stabbed
her with a knife, forced her to give him oral sex, and bit her. He left after about an hour, and
the complainant then went next door and called the police. 

 Later that same morning, Abilene Patrol Sergeant Barbian, who was searching for the
suspect, discovered appellant hiding in the back of a pickup. Sgt. Barbian read appellant his
Miranda rights, and appellant immediately invoked his right to counsel: "I am not saying
anything until I get my lawyer." He was not questioned any further. Instead, Detective Joe
Tauer took appellant to the hospital where the complainant identified him as her assailant. 
Then Detective Tauer took appellant to the police station, again read him his Miranda rights,
and told appellant that he needed some background information as part of the administrative
procedure of booking him into jail. (5) Detective Tauer said that he was not going to ask any
questions about the assault because he had been told that appellant had invoked his right to an
attorney. Before the booking procedure began, appellant "got upset" and said that, although he
"didn't want to talk to the patrol officer," he did want "to talk to a detective" about the assault. 
 Because appellant seemed so upset, Detective Tauer called his supervisor who said that
appellant could "uninvoke" his right to counsel. Detective Tauer testified that he was
"absolutely" sure that appellant initiated the conversation about the assault, and he made sure
that appellant wanted to "uninvoke" his right to counsel. So the detective again read appellant
his Miranda rights, appellant expressly waived those rights, and he gave his first written
statement. 

 In that statement, made on November 23rd, appellant said he had hitchhiked to Abilene,
where he met Chester Wallace at the bus station. Wallace offered him a place to stay and the
next day appellant went to a party in Chester's apartment complex. Appellant admitted that he
assaulted and "might have stabbed" the complainant. 

 Three days later, on November 26th, Detective Tauer approached appellant, who was
being held in jail. He told appellant that his first statement did not match up with the
complainant's account of what happened and asked him to make another statement. After again
receiving and waiving his Miranda rights, appellant gave a second statement. In that statement,
appellant gave a significantly different, more inculpatory, account of the events, including an
admission that he had broken into the complainant's apartment.

 Both of these written statements were admitted at trial, and a jury convicted appellant
of all three offenses and sentenced him to life in prison on each conviction.


 The Court of Appeals' Opinion


 The court of appeals held that the trial court erred in admitting the second statement,
taken on November 26th, because Detective Tauer initiated the interrogation that produced it. 
Although the court of appeals held that appellant initiated the first conversation, validly waived
his previously invoked right to counsel, and voluntarily made the first statement of November
23rd: (6)

 There was no evidence presented at the suppression hearing that appellant
initiated "further communications, exchanges, or conversations" with Detective
Tauer at the time of the second statement. To the contrary, the evidence clearly
shows that the further interrogation was initiated by Detective Tauer. Therefore,
the State has failed to show that the State complied with the rule in Edwards. (7)


 The court of appeals also held that the admission of appellant's second statement, in
which he admitted (for the first time) breaking into the complainant's apartment, may have
contributed to the jury's verdict on the burglary charge. (8) Therefore, the court affirmed the
aggravated-sexual-assault and aggravated-assault judgments, but reversed the burglary
conviction and remanded that cause for a new trial. (9) We granted the State's petition for
discretionary review. 

II.


 The Bright-Line Edwards Rule


 In Edwards v. Arizona, the Supreme Court set out a bright-line rule "designed to
protect an accused in police custody from being badgered by police officers." (10) The Court
stated that:

 an accused ... having expressed his desire to deal with the police only through
counsel, is not subject to further interrogation by the authorities until counsel
has been made available to him, unless the accused himself initiates further
communication, exchanges or conversation with the police. (11)


Thus, a suspect's unwillingness to answer questions without the advice of counsel indicates 
that he does not feel sufficiently comfortable with the pressures of custodial interrogation to
respond to police inquiries without an attorney's assistance. (12) Under Edwards, this
"discomfort" in dealing with the police without the guiding hand of counsel is presumed to
persist unless the suspect himself initiates further conversation about the investigation. (13) But
the Supreme Court has also explicitly stated that a suspect is not "powerless to countermand
his election" to speak only with the assistance of counsel. (14)

 In Oregon v. Bradshaw, (15) the Supreme Court clarified the Edwards rule and 
established a two-step procedure to determine whether a suspect has waived his previously
invoked right to counsel. (16) The first step requires proof that the suspect himself initiates
further communication with the authorities after invoking the right to counsel. The second
step requires proof that, after he reinitiates communication with the authorities, the suspect
validly waives the right to counsel. (17) Once this two-step waiver requirement is shown, the
suspect has countermanded his original election to speak to authorities only with the assistance
of counsel. The Edwards rule is fully satisfied.

 B. Once a Suspect Reinitiates Communications with the Authorities Concerning
the Investigation and He Validly Waives his Miranda Rights, the Edwards Rule
Is Satisfied and No Longer Applies.


 In this case, the court of appeals held that the State failed to comply with Edwards
because Detective Tauer, rather than appellant, initiated the second, November 26th, 
interview. (18) The court assumed that once appellant invoked his right to counsel on November
23rd, he was permanently protected by the Edwards rule from any future interrogation initiated
by police in the absence of counsel. Under this view, any subsequent waiver of counsel would
be invalid unless the suspect initiated each and every future communication with the
authorities. Because appellant did not himself initiate communications with Detective Tauer
on November 26th, the court of appeals concluded that the second statement was taken in
violation of the Edwards rule.

 Neither the appellant nor the court of appeals has cited any federal or state precedent
to support this position that Edwards exists in perpetuity. We have not discovered such a
federal constitutional principle. Instead, the facts in Bradshaw indicate that once the Edwards
rule has been satisfied, it drops out of consideration entirely. In Bradshaw, the suspect
invoked his right to counsel, but shortly thereafter reinitiated communication with the police
by asking, "Well, what is going to happen to me now?" (19) The officer responded that Bradshaw
did not have to talk to the police: "You have requested an attorney and I don't want you talking
to me unless you so desire because anything you say-because-since you have requested an
attorney, you know, it has to be at your own free will." (20) Bradshaw said that he understood, and
a discussion between the two followed in which the officer said that Bradshaw could help
himself by taking a polygraph examination. (21) Bradshaw agreed to do so. The next morning, the
police officer then approached Bradshaw in jail, read him his Miranda rights, which Bradshaw
waived, and took him to be polygraphed. After the polygraph examiner told Bradshaw that he
did not believe his account, Bradshaw recanted his previous version and admitted to inculpatory
facts. (22) Although Bradshaw reinitiated communications with the officer on the way to jail, he
did not reinitiate communications with the officer the following morning. This second, police-initiated encounter was not the precise issue before the Supreme Court, but surely that Court
would have held Bradshaw's inculpatory statements made after the polygraph examination
inadmissible if it intended that the Edwards rule bar all future police-initiated communications
after a suspect has once reinitiated communications and validly waived his Miranda rights. (23) 


 Because the Edwards rule was devised to prevent police from badgering a suspect into
giving up his right to counsel, compliance with that rule, coupled with a suspect's re-initiation
of communications about the investigation, plus a voluntary waiver of his previously invoked
right to counsel, fully satisfies the rule. Its protections then fall away. The Fifth Circuit has
aptly stated:

 the motivating factor behind the Edwards rule is to protect against and to
discourage police interference with the free exercise of the right to counsel....
[T]he cases following Edwards are clearly indicative to us that in the absence
of some police interference with the exercise of the right to counsel of the
accused, the Edwards rule is to be strictly and narrowly applied.... Our court has,
in other words, rejected an interpretation of Edwards' prophylactic rule that is
divorced from the context of badgering police conduct from which the rule
sprang. (24)


We find this analysis persuasive.


 The Fifth Circuit has also explicitly rejected the notion that a Fifth Amendment
invocation of counsel acts as a perpetual bar to the authorities initiating a conversation in the
absence of counsel, regardless of an intervening waiver. In Willie v. Maggio, (25) the suspect,
Willie, was arrested in Arkansas for committing federal crimes. He invoked his right to
counsel and declined to speak to the arresting officers. Later, however, Willie reinitiated
communication with an FBI agent and agreed to talk to him without counsel. The Fifth Circuit
held that, once Willie had reinitiated communications with the FBI and waived his right to
counsel, state police officers (who were unaware that Willie had reinitiated communications
with an FBI agent) were not barred by the Edwards rule from questioning him about other
offenses "unless he again refused to respond to such questions without a lawyer." (26) The court
stated that "[t]he critical inquiry is whether Willie was further interrogated before he
reinitiated conversation with law enforcement officials. He was not, and thus Edwards was
not violated." (27) In other words, the Edwards protection ceased once Willie initiated contact
and waived his previously invoked right to counsel. Of course, Willie could have, by once
again invoking his right to counsel when questioned by either state or federal officers,
reinvoked protection under Edwards, but he did not do so.

 We agree with the reasoning in Willie v. Maggio: the critical inquiry is whether the
suspect was further interrogated before he reinitiated conversation with law enforcement
officials. If he was not, Edwards is not violated. (28) A suspect's invocation of his right to
counsel acts like a protective Edwards bubble, insulating him from any further police-initiated
questioning. Only the suspect himself can burst that bubble by both initiating communications
with police and expressly waiving his right to counsel. Once that bubble is burst, however,
Edwards disappears, and the police are free to reinitiate any future communications and obtain
any further statements as long as each statement is voluntarily made after the waiver of
Miranda rights.

 In this case, appellant ended any police-initiated interrogation by requesting counsel. 
Under Edwards, it was presumed that appellant chose not to speak without assistance of
counsel. But on that same day appellant himself reinitiated further conversation with Detective
Tauer. The Edwards presumption that appellant chose not to speak without legal counsel
disappeared. Appellant then explicitly waived his right to counsel and made his first statement
to Detective Tauer. The protections provided by Edwards disappeared. Thus, the second
written statement was not the result of a re-approach made in violation of Edwards because
appellant had taken himself out from under the protection of the Edwards bubble on November
23rd. Thereafter, police were free to reinitiate further conversations with him. He was
approachable. And when he was approached on November 26th, he did not reinvoke the
Edwards protection by reinvoking his right to counsel.

 Because we find that appellant's Fifth Amendment right to counsel was not violated by
Detective Tauer's taking of the November 26th statement, we reverse that portion of the
decision by the court of appeals, and we remand the case to that court for consideration of
appellant's remaining issues. (29)

Cochran, J.

Delivered: September 15, 2004

Publish
1. 451 U.S. 477 (U.S. 1981).
2. Id. at 484-85.
3. We granted the State Prosecuting Attorney's petition to review the following question:

 Where a suspect invokes his Fifth Amendment right to counsel during interrogation, but
thereafter reinitiates contact with law enforcement authorities and waives his right to
counsel, is it a violation of the rule of Edwards v. Arizona for law enforcement
authorities to subsequently initiate contact with the suspect where the suspect has not
again invoked his right to counsel?
4. Cross v. State, 114 S.W.3d 92, 98-99 (Tex. App. - Eastland 2003).
5. Questions normally attendant to arrest, custody, or administrative "booking" procedure do
not constitute "interrogation" for purposes of Miranda or Edwards. See Pennsylvania v. Muniz, 496
U.S. 582, 601 (1990); South Dakota v. Neville, 459 U.S. 553, 564 n.15 (1983); Rhode Island v.
Innis, 446 U.S. 291, 301 (1980); Clayton v. Gibson, 199 F.3d 1162, 1173 (10th Cir. 1999) (noting
that "'routine booking questions do not constitute interrogation because they do not normally elicit
incriminating responses'") (citation omitted); United States v. Carmona, 873 F.2d 569, 573-74 (2d
Cir. 1989) (stating that neither Miranda nor Edwards bars officers from asking routine booking
questions; "obtaining such pedigree information has not been viewed as unlawful custodial
interrogation"); compare United States v. Minkowitz, 889 F. Supp. 624, 627-28 (E.D. N.Y. 1995)
(officer's questioning of defendant during booking process concerning use of specific alias found on
credit card in his wallet went beyond benign category of basic identifying data required for booking and
was the type of questioning "reasonably likely to elicit an incriminating response").
6. Appellant petitioned this Court for discretionary review of that holding by the court of appeals,
but we declined to grant review of that issue, and therefore, we express no opinion on its correctness.
7. Cross v. State, 114 S.W.3d at 98-99.
8. Id. at 99.
9. Id. at 101. 
10. Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983) (plurality op.) (discussing purpose of
Edwards rule).
11. Edwards, 451 U.S. at 484-85. In Edwards, the Supreme Court distinguished the waiver of
the right to remain silent from the waiver of the right to counsel. When a suspect invokes his right to
remain silent, that right may, under certain circumstances, be waived by responding to later police-initiated questioning as explained in Michigan v. Mosley, 423 U.S. 96 (1975). However, when a
suspect invokes his right to counsel, a valid waiver cannot be established by the mere fact that he
responded to later police-initiated questioning. Edwards, 451 U.S. at 484. A waiver of the right to
counsel requires "additional safeguards" to protect the suspect from police badgering him into waiving
that right. Id. at 484-85.
12. Arizona v. Roberson, 486 U.S. 675, 684 (1988) ("Roberson's unwillingness to answer any
questions without the advice of counsel, without limiting his request for counsel, indicated that he did not
feel sufficiently comfortable with the pressures of custodial interrogation to answer questions without an
attorney").
13. Id.
14. Edwards, 451 U.S. at 485.
15. 462 U.S. 1039 (1983). Justice Rehnquist wrote the opinion for a four-justice plurality. 
Justice Powell wrote a concurring opinion, while Justice Marshall wrote a dissent joined by three other
justices. Seemingly, the plurality and dissent agreed that if a suspect "initiates" further communications
with the police and demonstrates a willingness and desire to discuss the subject matter of the
investigation with authorities, the Edwards rule is satisfied. 462 U.S. at 1045-46 (plurality op.) and
1055 (dissenting op.). The dispute between the plurality and the dissent centered upon the application
of that standard to the specific facts, i.e., whether Mr. Bradshaw's statement, "What is going to happen
to me now?" could be understood as an initiation of communications concerning the investigation. 
Justice Powell, in his concurrence, disagreed with the rule in Edwards, arguing that the dispute between
Justices Rehnquist and Marshall in Bradshaw showed the flaws of that decision; he preferred an
approach that simply evaluated all the facts and circumstances of a case. 462 U.S. at 1047-51.
16. Id. at 1044-45.
17. Id. at 1045-46.
18. Cross v. State, 114 S.W.3d at 98.
19. The specific issue before the Supreme Court was whether this question really did constitute
an "initiation" of further communications by the suspect. According to the plurality, it did. Bradshaw,
462 U.S. at 1045-46 ("[a]lthough ambiguous, the respondent's question in this case as to what was
going to happen to him evinced a willingness and a desire for a generalized discussion about the
investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial
relationship").
20. Id. at 1042.
21. Id. 
22. Id.; see also id. at 1049 (Powell, J., concurring) (setting out chronology of events).
23. Similarly, in Wyrick v. Fields, 459 U.S. 42 (1982), the accused, Fields, had
retained counsel. After talking with his attorney, Fields requested that the police
administer a polygraph examination. He signed a statement that he understood his Miranda
rights and did not want an attorney at that time. The results of the polygraph examination
were unfavorable, and, during a police-initiated interview that followed, Fields confessed. 
He was taken before the police chief and again informed of his Miranda rights. He again
confessed. The Eighth Circuit held that the confession was barred by Edwards, concluding
that Fields had initiated only the polygraph examination, not the later interrogation after the
polygraph. The Supreme Court reversed and held that "by requesting a polygraph
examination, [Fields] initiated interrogation" that later led to the confession. The
confession was therefore voluntary and admissible even though the post-polygraph
interrogation was initiated by the police and occurred in the absence of his attorney. The
Court expressly stated that the lower court's contrary holding was an "unjustifiable
restriction on reasonable police questioning." Id. at 49 (emphasis added).
24. Plazinich v. Lynaugh, 843 F.2d 836, 838-39 (5th Cir. 1988) (citation and internal
quotation marks omitted).
25. 737 F.2d 1372 (5th Cir. 1984).
26. Id. at 1384.
27. Id. See 1 W. LaFave & J. Isreal, Criminal Procedure § 6.9 n. 99 (1991 Supp.)
(citing Willie for the proposition that, just as police conduct can violate the Edwards prohibition even
when the particular officer who makes contact was unaware of the defendant's prior invocation of his
right to counsel, "if there has been an 'initiation' by the defendant this also need not be known by the
officer who then obtains the waiver and interrogates"). See also Hopkins v. State, 263 Ga. 354, 357,
434 S.E.2d 459, 462 (Ga. 1993) (citing Willie and holding that Officer Tkacik did not violate
Edwards because once Hopkins initiated conversation with another officer, Officer Tkacik, even
though he was unaware of that initiation, was free to question Hopkins so long as Hopkins made a
knowing and intelligent waiver of his rights); and Houghton v. State, 6 P.3d 643, 648-649 (Wyo.
2000) (citing Willie and holding interview conducted by DCI Agent Peters did not violate Houghton's
Sixth Amendment right to counsel because by asking to speak with Officer Bergen, Houghton evinced
a willingness and a desire for a generalized discussion with the authorities).
28. See McCarthy v. State, 65 S.W.3d 47, 51 n. 6 (Tex. Crim. App. 2001) ("Of course, if the
arrestee reinitiates the conversation, the Edwards rule is satisfied").
29. See Cross, 114 S.W.3d at 100 n. 4 ("Since we will reverse and remand the conviction for
burglary of a habitation with intent to commit aggravated sexual assault, we need not address
appellant's remaining issues insofar as they relate to that conviction").