In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00102-CR


______________________________




DEMARCUS WHETSTONE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 05F0380-005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Demarcus Whetstone appeals from his conviction by a jury of injury to a child. See Tex.
Penal Code Ann. § 22.04 (Vernon Supp. 2006). (1)
 The jury found Whetstone intentionally or
knowingly caused serious bodily injury and assessed punishment at forty-five years' imprisonment.
Whetstone contends on appeal the evidence is legally and factually insufficient to support the jury's
finding that he intentionally or knowingly caused serious bodily injury to the child.

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and
manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the
verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson, 23 S.W.3d
at 7; Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 Whetstone was a friend of the child's mother, Latasha Bannister. Bannister testified that she
had asked Whetstone to babysit while she took her Civil Service Examination and that Whetstone
had babysat for and bathed the child, Isaiah, on several previous occasions. She further testified she
trusted Whetstone with Isaiah and believed Whetstone cared for her and her child. 

 The evidence shows that, during the time Whetstone was babysitting on this occasion, he
took eight-month-old Isaiah to the emergency room for burns on his back, buttocks, and genitals.
Dr. Robert Fry, the attending physician at the emergency room, testified that the burn was a serious
injury, possibly life threatening, and that Isaiah had suffered full thickness second-degree burns (2) over
approximately twenty percent of his body. Fry further testified that individuals are given a pain
threshold score when they are brought into the emergency room and that Isaiah's pain threshold score
was ten on a scale of one to ten. Fry stated he was told by Whetstone at the emergency room Isaiah
had tipped over a mop bucket and spilled hot water down his back, but that he saw no splash pattern
of burning anywhere on Isaiah's body and did not believe an eight-month-old child could pull a mop
bucket over on himself and sustain injuries to his back. Dr. Jerry Jones, a pediatrician employed by
Arkansas Children's Hospital in Little Rock, Arkansas (where Isaiah was air-lifted from Texarkana),
testified that the line of clear demarcation of Isaiah's burns was consistent with a child being held
in place in hot water. Jones stated these burns were "typical emersion [sic] burns, and the lack of
splash marks and the constancy of the demarcation between the non-burned areas is classical for an
intentional emersion [sic] of a child in hot water." 

 Detective Kevin Schutte testified that, when he and another officer investigated, they found
a bucket with a mop in it; there was a small amount of wetness on the bottom of and underneath the
bucket, but no spill or puddle. They found dust around the mop bucket, and the mop itself was not
very damp. There were no wet towels found anywhere in the apartment. 

 Schutte also testified they found a plastic infant tub used to bathe small children. It was the
type of tub contoured for an infant and made to help hold an infant in place while he or she was
being bathed. There was a pool of water in the bottom of the tub. The contour of the tub matched
the pattern of burns on Isaiah's back. Schutte further testified the water heater in the apartment was
set at its highest setting. 

 Schutte stated that, when he confronted Whetstone, he changed his story from saying that
Isaiah had tipped over a mop bucket to saying that he (Whetstone) had accidently burned Isaiah
while giving him a bath and did not realize Isaiah was burned until he started to dry Isaiah after the
bath. He also testified that Whetstone originally told him the child was not crying, but then told him
that the child continued to cry, and he was unable to stop the child from crying--that the baby's
continuous crying made him mad.

 Whetstone testified in his own defense. He testified he had given Isaiah a bath that day
because Isaiah had dirtied his diaper. He further testified that he was not mad at the child and that
he loved Isaiah like he was his own son. He also testified he had told the doctor at the emergency
room the burn had happened due to a mop bucket, but that he made up the story because he was
scared. Whetstone further testified that he had tested the water in the tub and that it did not feel hot
to him. He said he left Isaiah in the tub where he could see him and went out to smoke a cigarette
for about twenty minutes. He did not realize Isaiah was burned until Isaiah turned over; he said the
burn did not look that bad. 

 Whetstone testified that he did not intend to hurt Isaiah, that he made a mistake by not
checking the water at the right time and by putting too much hot water and not enough cold into the
tub. He stated that Isaiah was playing with a rubber duck, and was not crying while he was in the
tub. Whetstone testified that, after he saw the burns, he took Isaiah to a neighbor's house, who told
him to take the baby to the hospital. 

 We recognize that, in our review of the evidence, we must defer to the jury's findings and
may not substantially intrude on the fact-finder's role as the sole judge of the weight and credibility
of the witnesses. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); Mosley v. State,
141 S.W.3d 816 (Tex. App.--Texarkana 2004, pet. ref'd). Intent may be directly proven, or it may
be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Mental culpability is of such a nature
that it generally must be inferred from the circumstances under which a prohibited act or omission
occurs. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). It is not necessary that
each bit of circumstantial evidence by itself directly and independently prove guilt; instead, what is
needed is that the cumulative force of all circumstances establish guilt. Beardsley v. State, 738
S.W.2d 681, 685 (Tex. Crim. App. 1987). 

 The jury heard: (1) conflicting statements by Whetstone as to how the child was injured--he
first told the doctor the child accidentally turned over a bucket of hot water, but later stated the child
was accidentally burned during a bath; and (2) testimony of Dr. Jones that, if a child is accidentally
placed in hot water, you would expect a lot of thrashing about, causing a wavering of burn
demarcation between burn and skin. Here, the lack of splash burns and clear demarcation between
burned skin and normal skin was consistent with a child being held down in hot water. 

 The jury had the opportunity to hear the medical testimony about the cause, nature, and
severity of the injuries, and reviewed photographs showing the child's burns. The jury observed the
demeanor of the witnesses and judged the weight and credibility of their testimony. There was
evidence that the child would have been (and was) screaming in pain and that the line of demarcation
of the burn was so precise as to suggest that he may have been forcibly held in place. Weighing all
the evidence in a neutral light, both in support of and against the finding, we conclude the jury was
rationally justified in finding guilt beyond a reasonable doubt. 

 The evidence is legally and factually sufficient to support the verdict.

 We affirm the judgment.



 Jack Carter

 Justice

Date Submitted: February 20, 2007

Date Decided: February 21, 2007


Do Not Publish

1. A person commits the offense of injury to a child if he or she "intentionally, knowingly,
recklessly, . . . causes to a child . . . (1) serious bodily injury." Tex. Penal Code Ann. § 22.04(a).

2. Dr. Fry testified that a full thickness second-degree burn involves all of the full layer, that
it is "right down to the part where you would say it's a third degree burn, but it's not through the
entire dermis yet." 


ords occurring in the presence of the victim threatens
to cause, or places the victim in fear of death or serious bodily injury. Tex. Pen. Code Ann.
§ 22.021. The controlling difference in this case is the presence of a threat or fear of death
or serious bodily injury.



          Thus, the question for our review is focused. Is there any evidence in the record
that would allow a rational juror to find that Hardy had committed sexual assault, but did
so without employing acts or words which threatened, or placed the victim in fear of, death
or serious bodily injury? We hold there is such evidence.
          The victim testified she believed she would be subject to death or serious bodily
injury if she resisted Hardy's sexual advances. She testified Hardy struck her in the face. 
She also testified Hardy told her, "I'll take you out," if she tried to stop anyone for help. 
This evidence of the existence of aggravating factors did not go uncontradicted.
          FBI agent Cliff Carruth testified about statements Hardy made to him. Carruth
testified Hardy told him he did not strike the victim but "simply jerked her around and
shoved her to the ground and then he says he then forced sex on her." Carruth did not
testify Hardy told him he threatened the victim or acted in a way as to place her in fear of
death or serious bodily injury.
          In seeking submission of a lesser offense, the bar that a party is required to clear
is not high. "So long as there is some evidence which is 'directly germane' to a lesser
included offense for the factfinder to consider, then an instruction on the lesser included
offense is warranted." Jones, 984 S.W.2d at 257. The jury was free to believe any or all
of the victim's testimony just as it was free to do so with Carruth's. Indeed, the record
shows that the jury did weigh Carruth's testimony when deciding if the aggravating factors
had been proven. A jury note reads, "Several jurors believe Spc. Agent Carruth's
testimony contains Mr. Hardy's admission of a verbal threat against Jane Doe 1003. 
Additional jurors believe he did not admit to any type of threats." 
          We hold that Carruth's testimony was more than a scintilla of evidence that would
allow a rational juror to determine Hardy had committed sexual assault but not aggravated
sexual assault. The trial court therefore did not err by submitting a lesser included offense
instruction to the jury. Hardy's first point of error is overruled.
Error Regarding Testimony Not Preserved
          Hardy next contends the trial court erred by allowing Carruth to testify about oral
statements Hardy made to him. Hardy's contention on appeal is that his oral statements
were inadmissible because they did not comply with Article 38.22 of the Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005). Hardy did not,
however, present this complaint to the trial court. To present a complaint for appellate
review, that same complaint must have been made to the trial court. Tex. R. App. P. 33.1. 
          Hardy contends this complaint was presented to the trial court. However, the portion
of the record to which he directs us concerns a discussion between the trial court and
counsel about the testimony of a detective with the Kilgore Police Department, not Carruth.
In addition, Hardy's trial counsel conceded during this discussion with the trial court that
Carruth's testimony was admissible. Because Hardy did not raise this issue at the trial
court level, we will not consider it here. 
Complaint Regarding Sufficiency of Evidence to Prove 
Enhancement Allegation Not Preserved

          Hardy also contends the evidence was legally and factually insufficient to prove the
prior offense used to enhance his conviction. He correctly points out that "[t]he Texas
statute requires that there be some proof that the elements of the enhancement conviction
are substantially similar to some offense listed in [Penal Code § 12.42(c)(2)(B)]." He then
complains that "in the case at bar, there was no such offer and there is no such proof." We
overrule this contention, affirming the trial court's determination that the elements of the
prior offense are substantially similar to one of the offenses listed in Section 12.42(c)(2)(B).
          During the trial's punishment phase, the State introduced evidence Hardy had
previously been convicted of "forcible rape" in the state of California. See Cal. Pen. Code 
§ 261(a)(2). The State introduced certified documents from California showing such
conviction in cause number CR 38768 in the superior court of Riverside County on
March 11, 1991, and specifically referencing Section 261(a)(2) of the California Penal
Code. Hardy did not object to the introduction of these documents. 
          Section 12.42(c)(2)(B)(v) of the Texas Penal Code provides a mandatory life
sentence for a defendant convicted of sexual assault who has previously been convicted
of an offense under the laws of another state with elements that are substantially similar
to the offenses listed in subsections (B)(i)–(iv). These offenses are all sex-related crimes,
including sexual assault, indecency with a child, and burglary with the intent to commit
sexual assault. Tex. Pen. Code Ann. § 12.42(c)(2)(B). 
          Statutory interpretation is a question of law to be determined by the trial court, not
the jury. See Kuhn v. State, 45 S.W.3d 207, 209 (Tex. App.—Texarkana 2001, pet. ref'd). 
Therefore, the trial court was required to take judicial notice of the California statute and
make a finding that the California offense is substantially similar to one of the offenses
discussed above. See Cross v. State, 114 S.W.3d 92, 100 (Tex. App.—Eastland 2003),
aff'd in part & rev'd in part on other grounds, 144 S.W.3d 521 (Tex. Crim. App. 2004). 
          A court may, on its own motion, take judicial notice of the constitutions, public
statutes, rules, regulations, ordinances, court decisions, and common law of every other
state. Tex. R. Evid. 202. Before submitting its charge to the jury on the enhancement
allegation, the trial court discussed with the parties, outside the presence of the jury, how
it would proceed on the enhancement. The trial court informed both the State and Hardy
that, if the jury found the enhancement true, the trial court would impose a life sentence
on Hardy. Although not shown by the record, taking judicial notice of the California statute
and finding that the California offense is substantially similar to an offense in Section
12.42(c)(2)(B) was implicit in the trial court's decision to follow this procedure. Such judicial
notice and finding must be assumed because the trial court could not charge the jury on
the enhancement, or impose a mandatory life sentence, without making such a
determination. 
          A party is entitled, on timely request, to an opportunity to be heard as to the
propriety of taking judicial notice. Tex. R. Evid. 202. Hardy did not make such a request
or object and, in fact, affirmatively agreed on the record that the court's intended procedure
was proper. He reiterated this position in his closing argument to the jury: 
[T]he State is seeking a life sentence. They're asking you to find this
allegation true.
 
The effect of that is when you do, Mr. Hardy will be sentenced by the
Court to a term of life in prison and that's kind of the end of it. 

           We review de novo the trial court's determination as we would any ruling on a
question of law. Tex. R. Evid. 202. Hardy was convicted under California Penal Code
Section 261(a)(2). That section provides, in part, that rape is an act of sexual intercourse
accomplished against a person's will by means of force, violence, duress, menace, or fear
of immediate and unlawful bodily injury on the person or another. Cal. Pen. Code
§ 261(a)(2). 
          This language is very similar to the Texas sexual assault statute, which provides,
in part, that a person commits sexual assault if the person causes the penetration of the
anus or sexual organ of another person by any means, without that person's consent. 
Sexual assault is without consent if the offender compels the other person to submit or
participate by the use of physical force or violence. See Tex. Pen. Code Ann. § 22.011. 
We hold the trial court's determination that the two statutes are substantially similar was
correct. Hardy's contention is overruled.
No Proof of Ineffective Assistance of Counsel
          Hardy finally contends he received ineffective assistance of counsel because his
attorney did not object to Carruth's testimony and did not secure the attendance of a
witness or make an offer of proof as to her testimony. We overrule this point of error.
          The standard for testing claims of ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on
this claim, an appellant must prove by a preponderance of the evidence (1) that counsel's
representation fell below an objective standard of reasonableness and (2) that the deficient
performance prejudiced the defense. Strickland, 466 U.S. at 688; Rosales v. State,
4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove
that the attorney's representation fell below the standard of prevailing professional norms
and that there is a reasonable probability that, but for the attorney's deficiency, the result
of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000). Under this standard, a claimant must prove that counsel's representation so
undermined the proper functioning of the adversarial process that the trial cannot be relied
on as having produced a just result. Strickland, 466 U.S. at 686. 
          Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. This Court will not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney
might have pursued a different course support a finding of ineffectiveness. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney, including appellant's
counsel on appeal, might have pursued a different course of action does not necessarily
indicate ineffective assistance.
          As we noted in our discussion of his second point of error, Hardy's trial counsel did
not object to Carruth's testimony. Hardy contends his trial counsel should have objected
because the oral statements to which Carruth testified were not properly recorded in
accordance with Article 38.22 of the Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 38.22 (Vernon 2005). 
          First, it is not clear that an objection, if made, would have been sustained. Section 8
of Article 38.22 provides that the requirements of that article do not apply if "the statement
was obtained by a federal law enforcement officer in this state or another state and was
obtained in compliance with the laws of the United States." Tex. Code Crim. Proc. Ann.
art. 38.22, § 8. Carruth was a federal law enforcement officer working for the FBI. There
is no contention that Hardy's statement was obtained in violation of the laws of the United
States. Therefore, the statement that Hardy made to Carruth would seem to be covered
by Section 8, rendering an objection fruitless.
          Hardy contends on appeal that Section 8 does not apply to Carruth's testimony
because he was working with Texas law enforcement officials when he obtained the
statement. While we do not express an opinion on the ultimate merits of such an
argument, we note that its success is far from certain. Hardy's trial counsel could have
reasonably believed that such an argument would have failed before the trial court.
          Second, there are any number of strategic reasons why Hardy's trial counsel may
have desired the introduction of Hardy's statement to Carruth. One, it contradicted the
testimony of the victim. Two, as discussed, it was evidence that, if Hardy was guilty, he
was guilty of a lesser crime. We will not second-guess through hindsight the strategy of
trial counsel. Blott, 588 S.W.2d at 592.
          Hardy also contends his trial counsel was ineffective because counsel failed to
secure the presence of Brenda Chappell, a potential witness. Counsel's failure to call
witnesses at the guilt/innocence and punishment stages is irrelevant absent a showing that
such witnesses were available and that appellant would benefit from their testimony. King
v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). Hardy has not made such a showing.
          We overrule Hardy's final point of error.
Conclusion
          Having denied all points of error, we affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice
 
Date Submitted:      December 27, 2005
Date Decided:         February 22, 2006

Publish