Troy Wayne CROSS, Appellant

v.

The STATE of Texas.

No. 1439–03.

Court of Criminal Appeals of Texas.

Sept. 15, 2004.

---

Gary M. Brown, Abilene, for Appellant.

Jeffrey L. Van Horn, Asst. State Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ. KEASLER, J., concurred.

In *Edwards v. Arizona*,[1] the Supreme Court held that once an accused person has expressed his desire to deal with the police only through counsel, all custodial interrogation must cease unless he initi-

1. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d   378 (U.S.1981).

ates further communication.[2] In this case, appellant was arrested and given his *Miranda* warnings. He immediately expressed his desire to deal with the police only through counsel, but, before counsel was made available to him, appellant himself initiated further communications with a different police officer, and, during the course of that interview, made a written statement. Three days later, that same officer approached appellant, again read him his *Miranda* rights which appellant waived, and obtained a second written statement.

The issue in this case is one of first impression in this state: Did the police officer take appellant's second statement in violation of the *Edwards* rule because he, the police officer, initiated the second interview with appellant three days after appellant had initiated the first interview?[3] We hold that when a suspect has invoked his right to counsel, but then voluntarily reinitiates conversation with the police and expressly waives his right to counsel, the *Edwards* rule has been satisfied. We conclude that, because the police in this case fully complied with the *Edwards* requirements, the trial court properly admitted appellant's second written statement into evidence. We reverse the judgment of the court of appeals which held that the second statement was inadmissible because appellant did not himself re-initiate the second interview as well as the first interview.[4]

## I.

### A. Factual Background

Appellant was charged with three offenses: (1) burglary of a habitation with intent to commit aggravated sexual assault, (2) aggravated sexual assault, and (3) aggravated assault.

At trial, the complainant testified that around 5:00 a.m., following an all-night party at her apartment, she heard a knock on her door. As she went toward the door, appellant unlocked the door with a key, broke the chain lock, and entered her apartment. He tied her up, stabbed her with a knife, forced her to give him oral sex, and bit her. He left after about an hour, and the complainant then went next door and called the police.

Later that same morning, Abilene Patrol Sergeant Barbian, who was searching for the suspect, discovered appellant hiding in the back of a pickup. Sgt. Barbian read appellant his *Miranda* rights, and appellant immediately invoked his right to counsel: "I am not saying anything until I get my lawyer." He was not questioned any further. Instead, Detective Joe Tauer took appellant to the hospital where the complainant identified him as her assailant. Then Detective Tauer took appellant to the police station, again read him his *Miranda* rights, and told appellant that he needed some background information as part of the administrative procedure of booking him into jail.[5] Detective Tauer

2. *Id.* at 484–85, 101 S.Ct. 1880.

3. We granted the State Prosecuting Attorney's petition to review the following question: Where a suspect invokes his Fifth Amendment right to counsel during interrogation, but thereafter reinitiates contact with law enforcement authorities and waives his right to counsel, is it a violation of the rule of *Edwards v. Arizona* for law enforcement authorities to subsequently initiate contact

with the suspect where the suspect has not again invoked his right to counsel?

4. *Cross v. State*, 114 S.W.3d 92, 98–99 (Tex. App.-Eastland 2003).

5. Questions normally attendant to arrest, custody, or administrative "booking" procedure do not constitute "interrogation" for purposes of *Miranda* or *Edwards*. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 110

said that he was not going to ask any questions about the assault because he had been told that appellant had invoked his right to an attorney. Before the booking procedure began, appellant "got upset" and said that, although he "didn't want to talk to the patrol officer," he did want "to talk to a detective" about the assault. Because appellant seemed so upset, Detective Tauer called his supervisor who said that appellant could "uninvoke" his right to counsel. Detective Tauer testified that he was "absolutely" sure that appellant initiated the conversation about the assault, and he made sure that appellant wanted to "uninvoke" his right to counsel. So the detective again read appellant his *Miranda* rights, appellant expressly waived those rights, and he gave his first written statement.

In that statement, made on November 23rd, appellant said he had hitchhiked to Abilene, where he met Chester Wallace at the bus station. Wallace offered him a place to stay and the next day appellant went to a party in Chester's apartment complex. Appellant admitted that he assaulted and "might have stabbed" the complainant.

Three days later, on November 26th, Detective Tauer approached appellant, who was being held in jail. He told appellant that his first statement did not match up with the complainant's account of what happened and asked him to make another statement. After again receiving and waiving his *Miranda* rights, appellant gave a second statement. In that statement, appellant gave a significantly different, more inculpatory, account of the events, including an admission that he had broken into the complainant's apartment.

Both of these written statements were admitted at trial, and a jury convicted appellant of all three offenses and sentenced him to life in prison on each conviction.

**B. The Court of Appeals' Opinion**

The court of appeals held that the trial court erred in admitting the second statement, taken on November 26th, because Detective Tauer initiated the interrogation that produced it. Although the court of appeals held that appellant initiated the first conversation, validly waived his previously invoked right to counsel, and voluntarily made the first statement of November 23rd:[6]

> There was no evidence presented at the suppression hearing that appellant initiated "further communications, exchanges, or conversations" with Detective Tauer at the time of the second statement. To the contrary, the evidence clearly shows that the further in-

L.Ed.2d 528 (1990); *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Clayton v. Gibson,* 199 F.3d 1162, 1173 (10th Cir.1999) (noting that " 'routine booking questions do not constitute interrogation because they do not normally elicit incriminating responses' ") (citation omitted); *United States v. Carmona,* 873 F.2d 569, 573–74 (2d Cir.1989) (stating that neither *Miranda* nor *Edwards* bars officers from asking routine booking questions; "obtaining such pedigree information has not been viewed as unlawful custodial interrogation"); *compare United*

*States v. Minkowitz,* 889 F.Supp. 624, 627–28 (E.D.N.Y.1995) (officer's questioning of defendant during booking process concerning use of specific alias found on credit card in his wallet went beyond benign category of basic identifying data required for booking and was the type of questioning "reasonably likely to elicit an incriminating response").

6. Appellant petitioned this Court for discretionary review of that holding by the court of appeals, but we declined to grant review of that issue, and therefore, we express no opinion on its correctness.

terrogation was initiated by Detective Tauer. Therefore, the State has failed to show that the State complied with the rule in *Edwards*.[7]

The court of appeals also held that the admission of appellant's second statement, in which he admitted (for the first time) breaking into the complainant's apartment, may have contributed to the jury's verdict on the burglary charge.[8] Therefore, the court affirmed the aggravated—sexual—assault and aggravated—assault judgments, but reversed the burglary conviction and remanded that cause for a new trial.[9] We granted the State's petition for discretionary review.

## II.

### A. The Bright–Line *Edwards* Rule

■ In *Edwards v. Arizona*, the Supreme Court set out a bright-line rule "designed to protect an accused in police custody from being badgered by police officers."[10] The Court stated that:

an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police.[11]

Thus, a suspect's unwillingness to answer questions without the advice of counsel indicates that he does not feel sufficiently comfortable with the pressures of custodial interrogation to respond to police inquiries without an attorney's assistance.[12] Under *Edwards*, this "discomfort" in dealing with the police without the guiding hand of counsel is presumed to persist unless the suspect himself initiates further conversation about the investigation.[13] But the Supreme Court has also explicitly stated that a suspect is not "powerless to countermand his election" to speak only with the assistance of counsel.[14]

■ In *Oregon v. Bradshaw*,[15] the Supreme Court clarified the *Edwards* rule

7. *Cross v. State*, 114 S.W.3d at 98–99.

8. *Id.* at 99.

9. *Id.* at 101.

10. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (plurality op.) (discussing purpose of *Edwards* rule).

11. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880. In *Edwards*, the Supreme Court distinguished the waiver of the right to remain silent from the waiver of the right to counsel. When a suspect invokes his right to remain silent, that right may, under certain circumstances, be waived by responding to later police-initiated questioning as explained in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). However, when a suspect invokes his right to counsel, a valid waiver cannot be established by the mere fact that he responded to later police-initiated questioning. *Edwards*, 451 U.S. at 484, 101 S.Ct. 1880. A waiver of the right to counsel

requires "additional safeguards" to protect the suspect from police badgering him into waiving that right. *Id.* at 484–85, 101 S.Ct. 1880.

12. *Arizona v. Roberson*, 486 U.S. 675, 684, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) ("Roberson's unwillingness to answer any questions without the advice of counsel, without limiting his request for counsel, indicated that he did not feel sufficiently comfortable with the pressures of custodial interrogation to answer questions without an attorney").

13. *Id.*

14. *Edwards*, 451 U.S. at 485, 101 S.Ct. 1880.

15. 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Justice Rehnquist wrote the opinion for a four-justice plurality. Justice Powell wrote a concurring opinion, while Justice Marshall wrote a dissent joined by three other justices. Seemingly, the plurality and dissent agreed that if a suspect "initiates"

and established a two-step procedure to determine whether a suspect has waived his previously invoked right to counsel.[16] The first step requires proof that the suspect himself initiates further communication with the authorities after invoking the right to counsel. The second step requires proof that, after he reinitiates communication with the authorities, the suspect validly waives the right to counsel.[17] Once this two-step waiver requirement is shown, the suspect has countermanded his original election to speak to authorities only with the assistance of counsel. The *Edwards* rule is fully satisfied.

## B. Once a Suspect Reinitiates Communications with the Authorities Concerning the Investigation and He Validly Waives his *Miranda* Rights, the *Edwards* Rule Is Satisfied and No Longer Applies.

In this case, the court of appeals held that the State failed to comply with *Edwards* because Detective Tauer, rather than appellant, initiated the second, November 26th, interview.[18] The. court assumed that once appellant invoked his right to counsel on November 23rd, he was permanently protected by the *Edwards* rule from any future interrogation initiated by police in the absence of counsel. Under this view, any subsequent waiver of counsel would be invalid unless the suspect initiated each and every future communication with the authorities. Because appellant did not himself initiate communications with Detective Tauer on November 26th, the court of appeals concluded that the second statement was taken in violation of the *Edwards* rule.

Neither the appellant nor the court of appeals has cited any federal or state precedent to support this position that *Edwards* exists in perpetuity. We have not discovered such a federal constitutional principle. Instead, the facts in *Bradshaw* indicate that once the *Edwards* rule has been satisfied, it drops out of consideration entirely. In *Bradshaw*, the suspect invoked his right to counsel, but shortly thereafter reinitiated communication with the police by asking, "Well, what is going to happen to me now?"[19] The officer responded that Bradshaw did not have to talk to the police: "You have requested an attorney and I don't want you talking to me unless you so desire because anything you say—because—since you have re-

---

16. *Id.* at 1044–45, 103 S.Ct. 2830.

17. *Id.* at 1045–46, 103 S.Ct. 2830.

18. *Cross v. State*, 114 S.W.3d at 98.

19. The specific issue before the Supreme Court was whether this question really did constitute an "initiation" of further communications by the suspect. According to the plurality, it did. *Bradshaw*, 462 U.S. at 1045–46, 103 S.Ct. 2830 ("[a]lthough ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship").

further communications with the police and demonstrates a willingness and desire to discuss the subject matter of the investigation with authorities, the *Edwards* rule is satisfied. 462 U.S. at 1045–46, 103 S.Ct. 2830 (plurality op.) and at 1055, 103 S.Ct. 2830 (dissenting op.). The dispute between the plurality and the dissent centered upon the application of that standard to the specific facts, *i.e.*, whether Mr. Bradshaw's statement, "What is going to happen to me now?" could be understood as an initiation of communications concerning the investigation. Justice Powell, in his concurrence, disagreed with the rule in *Edwards*, arguing that the dispute between Justices Rehnquist and Marshall in *Bradshaw* showed the flaws of that decision; he preferred an approach that simply evaluated all the facts and circumstances of a case. 462 U.S. at 1047–51, 103 S.Ct. 2830.

quested an attorney, you know, it has to be at your own free will." [20] Bradshaw said that he understood, and a discussion between the two followed in which the officer said that Bradshaw could help himself by taking a polygraph examination.[21] Bradshaw agreed to do so. The next morning, the police officer then approached Bradshaw in jail, read him his *Miranda* rights, which Bradshaw waived, and took him to be polygraphed. After the polygraph examiner told Bradshaw that he did not believe his account, Bradshaw recanted his previous version and admitted to inculpatory facts.[22] Although Bradshaw reinitiated communications with the officer on the way to jail, he did not reinitiate communications with the officer the following morning. This second, police-initiated encounter was not the precise issue before the Supreme Court, but surely that Court would have held Bradshaw's inculpatory statements made after the polygraph examination inadmissible if it intended that the *Edwards* rule bar all future police-initiated communications after a suspect has once reinitiated communications and validly waived his *Miranda* rights.[23]

■ Because the *Edwards* rule was devised to prevent police from badgering a suspect into giving up his right to counsel, compliance with that rule, coupled with a suspect's re-initiation of communications about the investigation, plus a voluntary waiver of his previously invoked right to counsel, fully satisfies the rule. Its protections then fall away. The Fifth Circuit has aptly stated:

> the motivating factor behind the *Edwards* rule is to protect against and to discourage police interference with the free exercise of the right to counsel.... [T]he cases following *Edwards* are clearly indicative to us that in the absence of some police interference with the exercise of the right to counsel of the accused, the *Edwards* rule is to be strictly and narrowly applied.... Our court has, in other words, rejected an interpretation of *Edwards*' prophylactic rule that is divorced from the context of badgering police conduct from which the rule sprang.[24]

We find this analysis persuasive.

The Fifth Circuit has also explicitly rejected the notion that a Fifth Amendment invocation of counsel acts as a perpetual

---

**20.** *Id.* at 1042, 103 S.Ct. 2830.

**21.** *Id.*

**22.** *Id.; see also id.* at 1049, 103 S.Ct. 2830 (Powell, J., concurring) (setting out chronology of events).

**23.** Similarly, in *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), the accused, Fields, had retained counsel. After talking with his attorney, Fields requested that the police administer a polygraph examination. He signed a statement that he understood his *Miranda* rights and did not want an attorney at that time. The results of the polygraph examination were unfavorable, and, during a police-initiated interview that followed, Fields confessed. He was taken before the police chief and again informed of his *Miranda* rights. He again confessed. The Eighth Circuit held that the confession was

barred by *Edwards*, concluding that Fields had initiated only the polygraph examination, not the later interrogation after the polygraph. The Supreme Court reversed and held that "by requesting a polygraph examination, [Fields] initiated interrogation" that later led to the confession. The confession was therefore voluntary and admissible even though the post-polygraph interrogation was initiated by the police and occurred in the absence of his attorney. The Court expressly stated that the lower court's contrary holding was an "unjustifiable restriction on *reasonable* police questioning." *Id.* at 49, 103 S.Ct. 394 (emphasis added).

**24.** *Plazinich v. Lynaugh*, 843 F.2d 836, 838–39 (5th Cir.1988) (citation and internal quotation marks omitted).

bar to the authorities initiating a conversation in the absence of counsel, regardless of an intervening waiver. In *Willie v. Maggio*,[25] the suspect, Willie, was arrested in Arkansas for committing federal crimes. He invoked his right to counsel and declined to speak to the arresting officers. Later, however, Willie reinitiated communication with an FBI agent and agreed to talk to him without counsel. The Fifth Circuit held that, once Willie had reinitiated communications with the FBI and waived his right to counsel, state police officers (who were unaware that Willie had reinitiated communications with an FBI agent) were not barred by the *Edwards* rule from questioning him about other offenses "unless he again refused to respond to such questions without a lawyer."[26] The court stated that "[t]he critical inquiry is whether Willie was further interrogated before he reinitiated conversation with law enforcement officials. He was not, and thus *Edwards* was not violated."[27] In other words, the *Edwards* protection ceased once Willie initiated contact and waived his previously invoked right to counsel. Of course, Willie could have, by once again invoking his right to counsel when questioned by either state or federal officers, reinvoked protection under *Edwards*, but he did not do so.

We agree with the reasoning in *Willie v. Maggio*: the critical inquiry is whether the suspect was further interrogated before he reinitiated conversation with law enforcement officials. If he was not, *Edwards* is not violated.[28] A suspect's invocation of his right to counsel acts like a protective *Edwards* bubble, insulating him from any further police-initiated questioning. Only the suspect himself can burst that bubble by both initiating communications with police and expressly waiving his right to counsel. Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.

In this case, appellant ended any police-initiated interrogation by requesting counsel. Under *Edwards*, it was presumed that appellant chose not to speak without assistance of counsel. But on that same day appellant himself reinitiated further conversation with Detective Tauer. The *Edwards* presumption that appellant chose not to speak without legal counsel disappeared. Appellant then explicitly waived his right to counsel and made his first

---

**25.** 737 F.2d 1372 (5th Cir.1984).

**26.** *Id.* at 1384.

**27.** *Id. See* 1 W. LaFave & J. Isreal, Criminal Procedure § 6.9 n. 99 (1991 Supp.) (citing *Willie* for the proposition that, just as police conduct can violate the *Edwards* prohibition even when the particular officer who makes contact was unaware of the defendant's prior invocation of his right to counsel, "if there has been an 'initiation' by the defendant this also need not be known by the officer who then obtains the waiver and interrogates"). *See also Hopkins v. State*, 263 Ga. 354, 357, 434 S.E.2d 459, 462 (Ga.1993) (citing *Willie* and holding that Officer Tkacik did not violate *Edwards* because once Hopkins initiated con-

versation with another officer, Officer Tkacik, even though he was unaware of that initiation, was free to question Hopkins so long as Hopkins made a knowing and intelligent waiver of his rights); and *Houghton v. State*, 6 P.3d 643, 648–649 (Wyo.2000) (citing *Willie* and holding interview conducted by DCI Agent Peters did not violate Houghton's Sixth Amendment right to counsel because by asking to speak with Officer Bergen, Houghton evinced a willingness and a desire for a generalized discussion with the authorities).

**28.** *See McCarthy v. State*, 65 S.W.3d 47, 51 n. 6 (Tex.Crim.App.2001) ("Of course, if the arrestee reinitiates the conversation, the *Edwards* rule is satisfied").

statement to Detective Tauer. The protections provided by *Edwards* disappeared. Thus, the second written statement was not the result of a re-approach made in violation of *Edwards* because appellant had taken himself out from under the protection of the *Edwards* bubble on November 23rd. Thereafter, police were free to reinitiate further conversations with him. He was approachable. And when he was approached on November 26th, he did not reinvoke the *Edwards* protection by reinvoking his right to counsel.

Because we find that appellant's Fifth Amendment right to counsel was not violated by Detective Tauer's taking of the November 26th statement, we reverse that portion of the decision by the court of appeals, and we remand the case to that court for consideration of appellant's remaining issues.[29]

---

**29.** *See Cross,* 114 S.W.3d at 100 n. 4 ("Since we will reverse and remand the conviction for burglary of a habitation with intent to commit aggravated sexual assault, we need not address appellant's remaining issues insofar as they relate to that conviction").