# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00140-CR

**Armando Moran, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3021024, HONORABLE BRENDA P. KENNEDY, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

Because I strongly disagree with the majority's characterization of the officer's offhand comment in this case as one he should have known would elicit an incriminating response, I would affirm the conviction and must respectfully dissent.

## DISCUSSION

The issue in this case is whether Moran was "interrogated" in violation of his *Miranda* rights. The purpose of these procedural safeguards is to prevent the "interrogation environment" from subjugating the suspect to the will of the examiner and thereby undermining his privilege against compulsory self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 457-58 (1965). These safeguards come into play when a suspect in custody is subjected to questioning or its functional equivalent; that is, words or actions that the police should know are reasonably likely to elicit a response that the prosecution may seek to introduce at trial. *Rhode Island v. Innis*, 446 U.S.

291, 300-01 & n.5 (1980).  Where, as here, a defendant has invoked his right to an attorney, all further police questioning must stop.  *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981) ("[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police."); *see also Arizona v. Roberson*, 486 U.S. 675, 681 (1988) (*Miranda*'s and *Edwards*'s prophylactic protections are necessary to counteract inherently compelling pressures of custodial interrogation and suspect's waiver of rights upon continued pressure despite his request for counsel is presumptively involuntary); *Innis*, 446 U.S. at 305-06.  Because the "interrogation environment" includes practices other than express questioning of the suspect, the prohibition on custodial interrogation after the suspect requests an attorney includes other "techniques of persuasion," including statements that the questioners know are likely to elicit an incriminating response.  *Id.* at 299.  However, offhand comments or remarks not designed to elicit a response do not constitute interrogation.  *Camarillo v. State*, 82 S.W.3d 529, 535 (Tex. App.—Austin 2002, no pet.) (citing *Innis,* 446 U.S. at 303).  We do not hold the police accountable for unforeseeable results of their words or actions, so the definition of interrogation does not include words or actions unless the police should have known they were likely to elicit an incriminating response.  *Innis*, 446 U.S. at 302.

Certainly here, where the officers responded to Moran's request for counsel by saying, "That's fine," and that he had the right to an attorney before mentioning that they had spoken to other witnesses and standing up and walking to the door, this statement was not designed to elicit a

response. I would hold that, under *Rhode Island v. Innis*, such a statement cannot be considered interrogation and that Moran's rights against compelled self-incrimination were not violated.

In *Rhode Island v. Innis*, the defendant, after having been advised of his *Miranda* rights, interrupted a conversation between two police officers in his presence regarding the danger to students from a school for handicapped children in the area who might find and accidentally injure themselves with a firearm left in the vicinity. 446 U.S. 291, 295 (1980). The defendant offered to show police the location of the gun; after being reminded of his *Miranda* rights, he indicated that he understood them but that he wanted to remove the gun because of his concerns for the children from the school in the area, and led the police to the weapon. *Id*. The United States Supreme Court held that the officers' conversation in the defendant's presence did not constitute "interrogation." *Id*. at 304.

In reaching this conclusion, the Supreme Court noted that the conversation was not direct questioning, but a dialogue between two officers "to which no response from the respondent was invited." *Id*. at 302. Similarly, Moran was not invited to respond to the officer's comment, as evidenced by the officer's acknowledgment that, because Moran requested an attorney, their conversation was over and by both officers' movement toward the door. "'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id*. at 300. In this appeal, we are faced with a situation in which the officers were immediately leaving the room, had ceased communicating with the suspect, and in which there was no visible compulsion other than that Moran remained in custody.

3

As in *Innis*, "this case boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response." *Id.* at 303. In *Innis*, as here, the officers made a few offhand remarks, not a lengthy harangue, and I do not believe that the officer's comment was particularly evocative, especially given that Moran already knew that the witnesses the officer named had been taken into custody.[1] *See id.* at 303 (comments were not particularly evocative and officers had no way of knowing that "respondent would be particularly susceptible to an appeal to his conscience concerning the safety of handicapped children."). In *Innis*, this meant that the officer should not have reasonably expected that his remarks would evoke such an incriminating response; I cannot see how Moran could make a more compelling case.[2] The offhand comment does not constitute interrogation as defined by the United States Supreme Court.

Moran's confession may only be excluded if the State has failed to show that he reinitiated communication with the police and thereafter validly waived his right to counsel. *Cross v. State*, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004). Once a suspect initiates communications with police and expressly waives his right to counsel, the police are free to obtain statements as long

---

[1] There is also no evidence that the officer made representations of or threats concerning the content of the other witnesses' statements.

[2] Indeed, if anything, Moran's case is less compelling than that in *Innis*, where the suspect was confined in a car with two officers who could have gone on pressuring the suspect for any length of time regarding a continuing danger handicapped children. *See Innis*, 446 U.S. at 294-95. Although Moran was confined in a room as an incident of his being in custody, the officers questioning him had indicated that they would respect his right to consult an attorney before speaking and had stood up and were exiting the room before he voluntarily spoke to them. There was no threat or possible danger; from all appearances all circumstances would remain as they were until Moran had an opportunity to consult an attorney as requested.

as each one is voluntarily made after the waiver of *Miranda* rights. *Id.* at 529. Here, the police terminated communication with Moran once he invoked his right to counsel, but Moran reinitiated communication when he stopped the officers from leaving the room as they reached for the door. Before writing his first statement, during which time the officers left the room, Moran initialed statements indicating that he understood his *Miranda* rights.[3] He then waived his rights by writing his "Voluntary Written Statement." This waiver was valid if the trial court properly found it to be knowing and intelligent under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983) (citing *Edwards*, 451 U.S. at 486 n.9). Here, in admitting both of Moran's statements, the trial court found that his waiver was knowing and intelligent under all the circumstances. Because the record indicates that Moran was repeatedly informed and understood that he had a right not to talk and to have an attorney present and that the police had demonstrated their willingness to cease questioning if he invoked his *Miranda* rights, I would uphold the trial court's finding that the waiver was voluntary and intelligent and its conclusion that the waiver was valid.

Thus, because the State has successfully shown that Moran reinitiated communication with the police and thereafter validly waived his right to counsel, I would hold that the trial court did not err in refusing to exclude his written confessions. *Cross*, 144 S.W.3d at 527.

---

[3] Moran initialed statements reading: "I have the right to remain silent . . . any statement I make may be used against me in court," "I have the right to have a lawyer present to advise me either prior to . . . or during any questioning," and "I have the right to terminate this interview at any time," among others.

**CONCLUSION**

Because the officer's remark did not amount to interrogation under *Innis* and the State has satisfied both prongs from *Cross*, I would hold that the admission of Moran's written confessions into evidence was not harmful error and affirm the judgment of the trial court. I respectfully dissent.

                    _____

                    David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Filed:   July 7, 2005

6