IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1159-07






ALFREDO LEYVA PECINA, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Meyers, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. 
Keller, P.J., filed a dissenting opinion.


O P I N I O N 



 Appellant, Alfredo Leyva Pecina, was found guilty of murder and sentenced to life
in prison. He appealed his conviction, arguing that the trial court erred in denying his
motion to suppress his statements to the police. The court of appeals affirmed the trial
court. Pecina v. State, No. 2-05-456-CR (Tex. App.-Fort Worth May 3, 2007) (not
designated for publication), 2007 Tex. App. LEXIS 3424. We granted review to consider
whether an attorney should have been provided for Appellant before he was questioned
by the police, and whether Appellant waived his Fifth and Sixth Amendment rights. We
hold that Appellant's rights to counsel had attached when he was arraigned, and that he
did not initiate the contact with the police as required to validly waive those rights. 
Therefore, he should not have been questioned without an attorney present. We will
reverse the court of appeals.

FACTS 

 Appellant and his wife, Michelle, lived with her father and her sister, Gabriela. 
One evening, Gabriela came home and found Appellant and Michelle lying on the floor
of their bedroom, bleeding from stab wounds. When she picked up the phone to call 911,
Appellant stood up and came toward her. She left the apartment and went to get a
neighbor. The neighbor called 911 and then went with Gabriela back to the apartment. 
When police and paramedics arrived, they found Appellant on the floor suffering from
stab wounds and took him to the hospital. Michelle was pronounced dead at the scene,
and it was later determined that she had been stabbed more than fifty times.

 Because the police believed that Appellant had murdered his wife and had
attempted to kill himself, detectives prepared a warrant for his arrest. The detectives
brought a Spanish-speaking magistrate, Judge Maddock, to the hospital to arraign
Appellant before the detectives attempted to interview him. The magistrate testified that
she and the detectives entered Appellant's hospital room and introduced themselves. She
went over to Appellant's bedside and pointed to the detectives and said, "They are here. 
They want to speak to you." She stated, "[H]e nodded his head or said 'yes.' I can't
remember, but there was an acknowledgment." She then read him his rights and asked
him if he wanted a court-appointed attorney. He said that he did. The magistrate wrote
on the bottom of the waiver of counsel form, "Per court motion, appoint defendant an
attorney." She asked him if he wanted to speak to the detectives, and he said, "Yes." She
said that he did not indicate that he wanted counsel present before he talked to the
detectives. 

 Before speaking with detectives, Appellant also signed the "Adult Warning Form,"
which says that you have the right to counsel, the right to remain silent, you do not have
to speak to the police, you are not required to make a statement, and you have the right to
stop any interview or questioning at any time. One of the detectives wrote in Spanish on
the side of the waiver of counsel form Appellant had already signed, "I asked for a
lawyer, but I also wanted to speak with the Arlington police." The officers read
Appellant the Miranda warnings twice, once before they started recording the interview
and again after turning on the recording device. See Miranda v. Arizona, 384 U.S. 436
(1966). 

 During the interview with the police, Appellant said that he and his wife had
argued. When asked if he had cut his wife, he said, "yes." He then signed a confession
written by one of the detectives stating that he had cut his wife. 

 Appellant filed a motion to suppress both his oral and written statements, claiming
that the statements were not voluntarily given and were obtained in violation of his
Fourth, Fifth, Sixth, and Fourteenth Amendment rights. At the suppression hearing, the
State asked the magistrate whether Appellant freely, intelligently, knowingly and
voluntarily spoke to the police officers. She testified, "He said he still - I said, I asked
them - him, 'do you still want to talk to them?' And he said, 'Yes.' He never said to me
that he wanted to talk to them."

 The trial court denied the motion to suppress and made findings of fact and
conclusions of law including that Appellant was fully informed of his rights and that
Appellant "indicated that although he did want a lawyer, that he wished to also talk with
detectives from Arlington, meaning that he basically was waiving his rights at that time . . 
." The trial court found that Appellant also signed various waivers of counsel and was
not under the influence of drugs or alcohol when he gave a statement that was recorded
and put in writing. Based on these findings, the trial court ruled that the statement was
taken voluntarily and was admissible. 

 The jury found Appellant guilty of murder and sentenced him to life in prison. 
Appellant appealed, raising several issues, including that his statement to police was
obtained in violation of his right to counsel.

COURT OF APPEALS

 The court of appeals addressed Appellant's issues related to the right to counsel
under the Fifth and Sixth Amendment and held that the trial court did not err in finding
that Appellant voluntarily waived his rights. The court reasoned that Appellant waived
his Fifth Amendment right to counsel "either by failing to invoke it, because nothing in
the testimony at the hearings or at trial clearly showed that Appellant indicated to Judge
Maddock or the detectives at the time of the interview that he wanted to speak to an
attorney about the questioning or to have one present during questioning, or because he
reinitiated the contact by answering 'yes' when asked by the magistrate if he still wanted
to speak with the detectives and by telling the detectives that he wanted to speak to them." 
Pecina, 2007 Tex. App. LEXIS 3424 at *21-22. 

 Considering the Sixth Amendment, the court concluded that Appellant's right to
counsel had attached when he was arraigned by the magistrate and requested a court-
appointed attorney. Id. at *23-24. The court determined that Appellant invoked his right
to counsel and then reinitiated contact with the detectives when he said, "I asked for a
lawyer, but also I wanted to speak with the Arlington police." He also waived his right to
counsel when he was advised of his Miranda rights by the detectives prior to the
interview. Id. at *25-27, citing Cross v. State, 144 S.W.3d 521 (Tex. Crim. App. 2004) 
(stating that a suspect has waived his previously invoked right to counsel if the suspect
himself reinitiated the communication with the police and thereafter expressly waived the
right to counsel). The court of appeals deferred to the trial court's findings of fact and
rejected Appellant's arguments that his Fifth and Sixth Amendment rights were violated.

 Appellant filed a petition for discretionary review asking us to consider the
following two grounds for review:

 When a defendant who had been given Miranda rights by a magistrate
simultaneously requests a lawyer and requests to speak to the police, must
an attorney be provided before the police can begin their interrogation?

 

 When the police enter a hospital room to take a statement from defendant in
custody after the police have been informed that the accused has requested
an attorney and simultaneously indicated a willingness to speak to the
police, has the accused 'reinitiated' contact with the police and voluntarily
waived his fifth and sixth amendment rights to counsel and rights against
self incrimination?

CASELAW

 In Edwards v. Arizona, 451 U.S. 477 (1980), the Supreme Court held that, 

 [W]hen an accused has invoked his right to have counsel present during
custodial interrogation, a valid waiver of that right cannot be established by
showing only that he responded to further police-initiated custodial
interrogation even if he has been advised of his rights. We further hold that
an accused, such as Edwards, having expressed his desire to deal with the
police only through counsel, is not subject to further interrogation by the
authorities until counsel has been made available to him, unless the accused
himself initiates further communication, exchanges, or conversations with
the police. 

Id. at 484-85. 

 The Court then extended Edwards to the Sixth Amendment in Michigan v.
Jackson, 475 U.S. 625 (1985). As in the case before us, in the two cases that were
consolidated and discussed in Jackson, the appellants requested appointment of counsel at
the arraignment. And, in each case, the investigating officers were present at the
arraignment and questioned the accused after counsel was requested, but before the
appellants had spoken with counsel. Each appellant was advised of his Miranda rights
prior to questioning and agreed to proceed with the interview without counsel. The Court
concluded that when a defendant requested counsel at an arraignment proceeding, the
police could not then initiate contact with the defendant and request a waiver of those
rights for the purpose of interrogation. Id. at 636.

 We considered Edwards in Cross v. State and held that if an appellant has invoked
his right to counsel but then initiates contact with the police and expressly waives the
right to counsel, then the Edwards rule is satisfied and "the suspect has countermanded
his original election to speak to authorities only with the assistance of counsel." 144
S.W.3d at 527 (citing Oregon v. Bradshaw, 462 U.S. 1093 (1983)). 

ANALYSIS

 Despite the fact that the grounds for review characterize the requests for a lawyer
and to speak to the police as simultaneous, as noted above, the record indicates that the
magistrate read Appellant his rights and asked if he wanted a court-appointed attorney. 
When he said that he did, she filled out the paperwork to begin the appointment process. 
She then asked Appellant if he wanted to speak to the detectives, who were waiting in his
hospital room.

 The State argues that Appellant failed to invoke his Fifth Amendment right to
counsel during interrogation; that his Sixth Amendment rights were not triggered by the
reading of the statutory warnings; and, even if Appellant invoked his Sixth Amendment
rights, he waived them. 

 Because Appellant did not unambiguously request that an attorney be provided for
the interrogation, the State asserts that the request for appointment of counsel was in the
event of a future trial, and not for the purpose of assisting him during questioning by the
detectives who were waiting to speak to him. The Supreme Court addressed and rejected
this argument in Michigan v. Jackson, stating that "We thus reject the State's suggestion
that respondents' requests for the appointment of counsel should be construed to apply
only to representation in formal legal proceedings." 475 U.S. at 633. This also directly
addresses the State's second argument, that adverse judicial proceedings are not initiated
by an arrest or by the magistrate reading Appellant his rights under Texas Code of
Criminal Procedure Article 15.17. See id. at 636 (once the Sixth Amendment attached in
dealings with magistrate, police could talk to a defendant only if he himself initiated the
contact.) Recently, the Supreme Court specifically considered Sixth Amendment rights in
relation to Texas Code of Criminal Procedure Article 15.17 and held that a defendant's
initial appearance before a magistrate judge, where he learns the charge against him and
his liberty is subject to restriction, marks the initiation of adversary judicial proceedings
that trigger attachment of the Sixth Amendment right to counsel. Rothgery v. Gillespie
County, 128 S.Ct. 2578, 2592 (2008). Because Appellant in this case had invoked his
rights to counsel when arraigned by the magistrate at the hospital, the remaining issue is
whether Appellant initiated the contact with the police and then validly waived his
previously invoked rights. See Cross, 144 S.W. 3d at 528. 

 The record indicates that Appellant did not himself initiate contact with the
detectives. The detectives came to the hospital with a warrant for Appellant's arrest and
brought a magistrate with them for the purpose of arraigning Appellant. The magistrate
informed Appellant of his rights and began the process of appointing an attorney for him. 
Only after she asked him if he wanted to speak to detectives did he reply, "Yes." In no
way does this indicate that Appellant himself initiated contact or opened the dialog with
the authorities. The magistrate testified that Appellant agreed to speak with the detectives
only after she asked him if he wanted to, stating, "He never said to me that he wanted to
talk to them." Therefore, there was no initiation of contact with the police by Appellant. 
Just as in Edwards, the State showed only that Appellant responded to further police-initiated questioning. (1) 

 As the Supreme Court stated in Jackson, "We thus hold that, if police initiate
interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his
right to counsel, any waiver of the defendant's right to counsel for that police-initiated
interrogation is invalid." Jackson, 475 U.S. at 636. 

CONCLUSION

 While we agree with the court of appeals that Appellant's Sixth Amendment right
to counsel attached when he was arraigned by the magistrate, we disagree that Appellant
himself initiated contact with the police. Saying "yes" when asked by the magistrate if he
wanted a court appointed attorney is enough to invoke the Sixth Amendment right to
counsel; however, answering "yes" when asked if he wanted to speak to detectives does
not indicate that Appellant initiated the contact as required under the Edwards bright-line
rule. The court of appeals erred in holding that Appellant initiated contact with the police
and waived his previously invoked rights to counsel. The judgment of the court of
appeals is reversed and the case is remanded for a harm analysis.


 Meyers, J.


Delivered: October 29, 2008

Publish

1. We acknowledge that it was the magistrate, not the detectives who actually initiated the
contact between Appellant and the police. However, as the Supreme Court noted in Jackson,
"Sixth Amendment principles require that we impute the State's knowledge from one state actor
to another." Jackson, 475 U.S. at 634.