

NUMBER 13-14-00175-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MANUEL PEÑA,                                                                   Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 107th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

A Cameron County jury found appellant Manuel Peña guilty of capital murder, *see*
TEX. PENAL CODE ANN. § 19.03(a)(2) (West, Westlaw through 2013 3d C.S.), and he was
sentenced to life imprisonment without the possibility of parole.  By one issue, Peña
asserts that the trial court erred in denying his motion to suppress statements made in

violation of his Sixth Amendment right to counsel.    We affirm.

## I.    BACKGROUND[1]

The State alleged that Peña murdered Ramon Pinon while in the course of committing or attempting to commit a burglary of Pinon's habitation.    *See id.*    Before trial, Peña filed a motion to suppress two statements that Peña provided to the police following his arrest.

At the suppression hearing, the State called Martin Morales, Jr., a former detective and current chief of police for the San Benito Police Department.    Morales testified that he took part in the Pinon homicide investigation, after Pinon's body was discovered on April 19, 2009.    Morales testified that on April 20, 2009, Cecilia Paz entered the police department with information about the Pinon murder.    According to Morales, Paz told him that Peña arrived at her residence on April 19 and "began speaking about the incident that occurred . . . the day before."    Paz later identified Peña through a photo lineup.    Paz told Morales that Peña attempted to sell her a small CD radio, a small television set, and an electric circular saw.    Paz indicated that she had purchased the circular saw from Peña.    Morales further testified that these items were the same items reported missing from Pinon's residence.    Paz told Morales that Peña had told her that "he had beaten up a [Spanish word for old man]".    Pinon's son, Ramon Pinon Jr., provided a statement to police and identified a Black & Decker circular saw, retrieved from Paz, as belonging to his father.

---

[1] As this is a memorandum opinion, and the parties are familiar with the facts, we will recite only the relevant facts necessary for the disposition of this appeal.    *See* TEX. R. APP. P. 47.4.

Morales applied for an arrest warrant and attached a "complaint affidavit," as well as other documents, including the statements from Paz and Pinon Jr. An arrest warrant was issued on April 20, 2009, and Peña was arrested later that evening. Shortly after his arrest, police read Peña his *Miranda* warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2013 3d C.S.). On April 21, 2009, Peña appeared before a magistrate, and Peña requested court-appointed counsel. *See id.* art. 15.17 (West, Westlaw through 2013 3d C.S.).

After his arrest and request for court-appointed counsel, Peña made two statements to the San Benito police—the first on April 22, 2009 and the second on April 30, 2009. The trial court ordered the April 22nd statement suppressed, after the State stipulated at the suppression hearing that it was inadmissible. The April 30th statement, however, was the result of Peña sending police a handwritten note asking to speak to them about the investigation "without [his] attorney present." The State argued that the second statement was the product of Peña's "free will" and after his *Miranda* warnings were read to him four times. The trial court agreed with the State and denied Peña's motion to suppress his April 30th statement.

The trial proceeded, and after four days of receiving evidence and arguments, the jury found Peña guilty of capital murder. The trial court assessed Peña's punishment at life imprisonment without parole in the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

## II. MOTION TO SUPPRESS

By his sole issue, Peña asserts that the trial court erred in failing to suppress his April 30th statement to police because it was obtained in violation of his Sixth Amendment

3

right to counsel.[2]

## A.    Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).   When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.   *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo.   *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Both parties acknowledge the trial court did not file findings of fact and conclusions of law.   However, we agree with the State's concession that such findings are unnecessary because the issue on appeal is not related to disputed facts, but turns upon an application of law to facts, whose resolution does not turn on an evaluation of credibility

---

[2] Although Peña asserts that his statement was obtained in violation of his Sixth Amendment right to counsel, his arguments appear to challenge his right to counsel under the Fifth Amendment. Accordingly, we will analyze it as such.

and demeanor. *See Guzman*, 955 S.W.2d at 89. Accordingly, we will conduct a de novo review of this issue.

**B.    Discussion**

Peña argues that "even though there is a purported waiver of right to counsel" related to his April 30th statement, such a waiver is invalid because he was represented by counsel at the time he made the purported waiver and made the waiver without the benefit of counsel. We disagree.

The United States Supreme Court devised a prophylactic rule in *Edwards v. Arizona*, 451 U.S. 477, 484 (1981) designed to "protect an accused in police custody from being badgered by police officers." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *see Cross v. State*, 144 S.W.3d 521, 526 (Tex. Crim. App. 2004) (recognizing the *Edwards* rule and the reasoning behind it). Simply stated, "an accused . . . having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police." *Edwards*, 451 U.S. at 484. Thus, under *Edwards*, a defendant's "discomfort" in dealing with police without the guiding hand of counsel is presumed to persist unless the suspect himself initiates further conversation about the investigation. *Cross*, 144 S.W.3d at 526 (citing *Arizona v. Roberson*, 486 U.S. 675, 684 (1988)). But the Supreme Court has also explicitly stated that a suspect is not "powerless to countermand his election" to speak only with the assistance of counsel. *Id.* (citing *Edwards*, 451 U.S. at 485). The Supreme Court clarified the *Edwards* rule and established a two-step procedure to determine whether a suspect has waived his previously invoked right to

counsel. *Id.* at 526–27 (citing *Oregon v. Bradshaw*, 462 U.S. 1039 (1983) (plurality op.)). The first step requires proof that the suspect himself initiates further communication with the authorities after invoking the right to counsel. *Id.* The second step requires proof that, after he reinitiates communication with authorities, the suspect validly waives the right to counsel voluntarily, constituting a knowing and intelligent relinquishment or abandonment of a known right or privilege, depending upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Edwards*, 451 U.S. at 482; *Cross*, 144 S.W.3d at 527.

The critical inquiry at this stage of the proceedings then turns to whether Peña was further interrogated before he reinitiated conversation with law enforcement officials. *Id.* at 529 (citing *Willie v. Maggio*, 737 F.2d 1372, 1384 (5th Cir. 1984)). If he was not, the *Edwards* rule is not violated. *Id.*; *see also McCarty v. State*, 65 S.W.3d 47, 52 n.6 ("Of course, if the arrestee reinitiates the conversation, the *Edwards* rule is satisfied."). The court of criminal appeals further explained the *Edwards* rule in the following manner, which we find helpful:

> A suspect's invocation of his right to counsel acts like a protective *Edwards* bubble, insulating him from any further police-initiated questioning. Only the suspect himself can burst that bubble by both initiating communications with police and expressly waiving his right to counsel. Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.

*Cross,* 144 S.W.3d at 529.

The day after Peña's arrest, he appeared before a magistrate and requested court-appointed counsel. At that point, it was presumed under *Edwards* that Peña invoked his Fifth Amendment right to counsel and did not want to deal with the police without the

6

"guiding hand of counsel" present. *See Edwards*, 451 U.S. at 484–85; *Cross*, 144 S.W.3d at 526. As a result, the State conceded at the suppression hearing that Peña's first statement to police on April 22nd was unconstitutional, which obligated the trial court to suppress that statement. However, eight days later, Peña voluntarily sent police a witnessed handwritten note that stated the following:

> I Manuel Peña would like to talk to S.B.P.D. about my case. I do this on my free will. I ~~don't~~ have not promise nothing [sic] in return. .without out my attorney present [strikethrough in original]

As a result of Peña sending this note, the presumption that Peña chose not to speak to police without the assistance of counsel under *Edwards* disappeared. *See id.* at 529. Furthermore, prior to making his April 30th statement to police, Peña knowingly and intelligently relinquished several of his rights in writing, including his right: (1) to "have a lawyer present to advise [him] either prior to any questioning or during any questioning; (2) to have a lawyer appointed "prior to or during any questioning; (3) "to remain silent and not make any statement at all and that any statement [made by him] may be used in evidence against [him] at trial;" and (4) "to terminate [the] interview at any time." Peña also acknowledged that he understood all of the aforementioned rights, and did not wish to consult with a lawyer. Finally, he, again, in writing waived his right to counsel and right to remain silent.

We conclude that the protections provided under *Edwards* disappeared in this case because Peña himself initiated further communication with the police through his handwritten note, despite invoking his right to counsel nine days prior, and after reinitiating that communication, Peña validly waived his right to counsel voluntarily, constituting a knowing and intelligent relinquishment and abandonment of his rights.

7

*See Edwards*, 451 U.S. at 482; *Cross*, 144 S.W.3d at 527.   Accordingly, the trial court did not err in denying Peña's motion to suppress his April 30th statement.   We overrule Peña's sole issue on appeal.

### III.   CONCLUSION

We affirm the trial court's denial of Peña's motion to suppress.


GINA M. BENAVIDES,
Justice


Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of June, 2015.

8