COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-22-00174-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th Judicial District Court |
| CLEVY MUCHETTE NELSON, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20210D02380) |

## DISSENTING OPINION

I write separately because I disagree with the second part of the Court's analysis whereby it reverses the trial court's suppression ruling. After reviewing the transcript of the suppression hearing, and viewing as well, the digital recording of Nelson's audio and video statement, and doing so in the light most favorable to the trial court's ruling, I would conclude the trial court properly suppressed the challenged evidence based on a violation of Nelson's constitutional rights. Because the majority concludes otherwise, I respectfully dissent.

### A. Fifth Amendment right to interrogation counsel

The Fifth Amendment of the United States Constitution prohibits the government from compelling a criminal suspect to bear witness against herself. U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against [herself]. . . ."). In *Pecina v.*

*State*, the Texas Court of Criminal Appeals described the procedural safeguards protecting such right against self-incrimination. 361 S.W.3d 68, 75 (Tex. Crim. App. 2012). First, the Court described that the United States Supreme Court "crafted safeguards to protect this 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial interrogations." *Pecina*, 361 S.W.3d at 75 (quoting *Miranda v. Arizona*, 384 U.S. 436, 441 (1966)). As relevant here, "[b]efore questioning a suspect who is in custody, police must give that person *Miranda* warnings." *Id*. "Only if the person voluntarily and intelligently waives [her] *Miranda* rights, including the right to have an attorney present during questioning, may [her] statement be introduced into evidence against [her] at trial." *Id*. Second, "once a person invokes [her] right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police-initiated interrogation after being advised of [her] rights again." *Id*. (citing *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)). *Pecina* explained: "[t]he purpose of the *Edwards* rule is to 'prevent police from badgering a defendant into waiving [her] previously asserted *Miranda* rights.'" *Id*. (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)). "That prophylactic rule protects the suspect—who has made the decision not to speak to law-enforcement officers without [her] lawyer and clearly communicated that decision to the police—from further police badgering." *Id*. Based on these safeguards, we are instructed that a trial court commits a constitutional violation by admitting evidence that *Miranda* and its progeny proscribes. *Contreras v. State*, 312 S.W.3d 566, 582 (Tex. Crim. App. 2010) (providing that *Miranda* operates as an exclusionary rule when law enforcement fails to honor an invocation of rights and no exception applies).

### B. Nelson's invocation of her right to counsel

The majority initially decides the record established that law enforcement officers created a situation that would lead a reasonable person in Nelson's position to believe their freedom of movement had been significantly restricted. Thus, the Court concludes the trial court did not abuse its discretion when it impliedly found Nelson was in custody when she was questioned by law enforcement. On that preliminary point, I fully agree. It follows, then, that police were obligated to give *Miranda* warnings including the right to counsel during questioning. No party disputes that *Miranda* warnings were given prior to the start of questioning. Rather, in dispute is whether the officers honored Nelson's request for counsel, which followed such reading of rights.

First, in looking at Nelson's initial invocation of her right to have counsel present to advise her prior to or during questioning, a court must determine whether the officers honored her request. When a suspect asks for a lawyer, interrogation must cease until counsel has been provided or the suspect herself initiates further communication. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010) (citing *Edwards*, 451 U.S. at 484–85). To trigger law enforcement's duty to terminate the interrogation, the suspect's request must be clear. *Id.* Moreover, "[i]f the accused's invocation of the right to counsel is clear, [her] responses to further questioning may not be used to cast doubt retrospectively on the clarity of [her] initial request." *Davis*, 313 S.W.3d at 339 (citing *Smith v. Illinois,* 469 U.S. 91, 100 (1984)).

At the start of the interview, Detective Garcia properly warned Nelson that before he could ask her any questions, he needed to advise her of her rights. After he reads the *Miranda* warnings, he then turns to Nelson requesting that she confirm her knowing, intelligent, and voluntary waiver of rights he had just read. Nelson responds saying, "I'd like to speak to my attorney." Garcia replies: "You want to speak to your attorney?" Nelson seemingly mumbles or nods her head.

3

Garcia next says: "So, we can't ask you nothing then. We're going to have to terminate the interview. Okay. We don't know what happened. That was the whole reason why. Okay. So, we-- the only way we can know what happened is if we talk to you. But if you request an attorney the interview will be terminated."

Nelson responds, "Can he just come here?" Detective Garcia says, "Can who come here?" She clarifies, "My attorney." He responds: "I don't know who your attorney is." Nelson replies: "It's the military, Chief of Justice." Garcia replies: "I don't. I mean. Again, I'm assuming you're military then, correct? You're active? I don't know how that works. I don't -- we don't deal with them. Okay. Like I said our whole purpose here was to find out what happened this morning 'cause we don't know what happened. Okay. But before we can ask you any questions, we have to advise you of your rights. Okay. If you're requesting an attorney, then we have to terminate the interview and we can't ask you anything. Okay." Nelson next says: "Is it a lot of questions?" He responds: "Well we're going to ask you what happened this morning because we don't know what happened this morning. That's the main question. And we were just going to hear you."

After a slight pause, Nelson says: "I have strep throat. But I can answer the questions." Detective Garcia says: "So, then you're saying that you change your mind, and you will talk to us. So, you do understand your rights and you hereby knowingly, intelligently, and voluntarily waive these rights then and you'll speak to us." After a slight pause, Nelson says: "Yes." Garcia then reconfirms her willingness to waive her rights. Throughout this exchange, neither Detective Garcia nor his partner ever moved from their seated position in chairs they had positioned directly across from Nelson. She herself sat in a chair across from them while dressed in a hospital gown.

At the motion hearing and on appeal, the State readily conceded that Nelson immediately invoked her right to counsel by stating she wanted to talk to her attorney before confirming whether

she intended to waive any of her *Miranda* rights. Indeed, the recorded interview plainly shows that when Detective Garcia asked whether she knowingly and voluntarily waived her rights, she immediately requested an opportunity to speak with her attorney. Rather than cease the interview, Detective Garcia plowed forward casting doubt on her request. He asked questions clarifying whether she actually wanted an attorney, told her he did not know who her attorney was, and repeated multiple times that they were simply trying to find out what happened. For our purposes, however, statements made after an unequivocal request "may not be used to cast retrospective doubt on the clarity of the initial request itself." *See State v. Gobert*, 275 S.W.3d 888, 893 (Tex. Crim. App. 2009) (quoting *Smith v. Illinois*, 469 U.S. 91, 100 (1984)) (holding an unequivocal invocation of a right to counsel was not honored by officers when a suspect immediately invoked his rights stating, "I don't want to give up any right, though if I don't got no lawyer").

In my view, Nelson's initial invocation was unambiguous and unequivocal. She repeated it at least twice, before asking a third time whether her attorney could "just come here." However, Detective Garcia continued with a series of statements, without interruption or pausing, persuading her to let them know what had happened regarding events of the early morning. Ignoring her plainly stated request for counsel during questioning, Detective Garcia mentioned that "if" she requested an attorney "the interview will be terminated." Characterizing his own conduct at the suppression hearing, Garcia testified that he immediately terminated the interview. That is, as he viewed the totality of the circumstances, he believed Nelson understood he had terminated the interview. Because the trial court granted the motion to suppress, there is an implied finding that it disbelieved Detective Garcia and concluded otherwise. Unlike the majority, I would conclude

5

the record supports the trial court's determination that Nelson's exercise of her right to counsel was not honored by an immediate termination of her interrogation by police.

### C. No bursting of the *Edwards* bubble by Nelson

Even assuming Detective Garcia terminated the interview midstream, I further disagree with the majority's conclusion that Nelson herself reinitiated conversation or communication about the case. Law enforcement must wait for counsel to be available to a suspect, unless the suspect herself "initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85. Under the two-step analysis, we determine, first, whether there is proof that the suspect, and not law enforcement, reinitiates communication after invoking the right to counsel. *Cross v. State*, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004). A suspect's desire to reinitiate can be shown by "a willingness and a desire for a generalized discussion about the investigation[.]" *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983). Second, we determine whether there is proof that after the suspect reinitiates communication, the suspect validly waives the right to counsel. *Cross*, 144 S.W.3d at 527.

First, the majority concludes that Detective Garcia's statements to Nelson after her invocation of her right to counsel did not rise to a level of continuing his questioning or interrogation. Distinguishing between the right to counsel and the right to remain silent, the Court holds that once a suspect invokes her right to counsel, only interrogation-type questions must cease. It views Detective Garcia's statements as non-interrogational because they were not reasonably likely to elicit an incriminating response. Again, I disagree. As discussed above, the record supports an implied finding that Detective Garcia did not honor her invocation of her right to counsel because he never terminated the interview, but instead, he attempted to retrospectively cast doubt on her invocation. *See Gobert*, 275 S.W.3d at 893.

6

The majority further concludes that after Nelson invoked her right to interrogation counsel, she "almost immediately reinitiated the interview after clearly being told it would terminate." Without describing a basis for its reasoning, the majority concludes the record shows Nelson expressed a "willingness and a desire for a generalized discussion about the investigation." I disagree. From my view, the record does not support that Nelson expressed her willingness and desire to talk without her counsel's presence by simply asking how many questions would be asked. Nelson so inquired only after Detective Garcia ignored her clearly stated request for counsel, repeated that he did not know anything about how counsel could be obtained, and told her he was simply trying to understand what had occurred earlier that morning.

The Court of Criminal Appeals has described that when a defendant invokes a right to counsel, that invocation creates a protective *Edwards* bubble, "insulating [her] from any further police-initiated questioning." *Cross*, 144 S.W.3d at 529. "Only the suspect [herself] can burst that bubble by both initiating communications with police and expressly waiving [her] right to counsel." *Id*. "Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights." *Id*.

Following that principle, this Court has held that a defendant reinitiated further communication with detectives when he expressed a desire to tell his story. *Engleton v. State*, No. 08-13-00077-CR, 2015 WL 1285202, at *4 (Tex. App.—El Paso Mar. 20, 2015, no pet.) (not designated for publication). In that case, the defendant was placed under arrest and read his *Miranda* rights. *Id.* at *2. The defendant stated he did not want to talk and wanted to get representation. *Id.* The detectives immediately terminated the interview, asked him nothing further, and placed him in a holding cell. *Id.* Minutes later, however, he flagged a detective down, stated

7

he wanted to speak to the detectives he had met with before, and expressed a desire to tell his side of the story. *Id.*

Contrasted with *Engleton*, there are no similar details in this case. There was no termination of the interview once Nelson invoked the protective *Edwards* bubble. And it was Detective Garcia who continued expressing his own desire to speak with her without delay as he otherwise did not know what had happened that morning. He expressed ignorance in how she might be able to access an attorney, describing he did not know how that worked. Only then did Nelson ask the number of questions he wanted her to answer. The State argues that "Detective Garcia reasonably could have interpreted her question as relating generally to the investigation, and the fact that he reaffirmed that Nelson wanted to waive her rights before commencing with the interview shows that he interpreted her question in this manner." In my view, however, neither the record nor the trial court's implied finding supports that supposed inference. The trial court's ruling on a motion to suppress will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). Standing apart from the majority, I would conclude the record here supports the trial court's implied finding that neither *Miranda* nor *Edwards* were satisfied. Thus, I would affirm the trial court's judgment.

GINA M. PALAFOX, Justice

June 28, 2023

Before Rodriguez, C.J., Palafox and Soto, JJ.

(Do Not Publish)

8