

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ZACHARY LEE JOHNSTON, | § | No. 08-20-00014-CR |
| Appellant, | § | Appeal from the |
| v. | § | 168th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20170D03893) |

## **O P I N I O N**

In *Edwards v. Arizona*, the United States Supreme Court held that once an accused has expressed his desire to deal with the police only through an attorney, all custodial interrogation must cease without counsel present unless the accused himself re-initiates further communication.[1] Following a suppression hearing, the trial court found that Appellant Zachary Lee Johnston initially told detectives he wanted a lawyer. However, before counsel was made available to him, he re-initiated communications, waived his rights, and provided a recorded interview. On appeal, Johnston claims the trial court erred by not suppressing the incriminating statement he gave without the aid of an attorney, asserting the officers had violated *Edwards* and its progeny. Finding no error, we affirm.

---

[1] *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981); *see also Cross v. State*, 144 S.W.3d 521, 526 (Tex. Crim. App. 2004)(acknowledging *Edwards*' bright line rule protecting an accused from police badgering while in custody).

## BACKGROUND

On May 19, 2017, a criminal law magistrate judge found probable cause existed for issuance of an arrest warrant for Johnston pertaining to the capital murder of Tyler Croke. That same day, at an apartment complex in Las Cruces, New Mexico, the Las Cruces Police Department (LCPD) located Johnston with others and placed him under arrest. Johnston invoked his right to have an attorney present when detectives from the El Paso Police Department (EPPD) attempted to interview him after his arrest. Consequently, Johnston did not give a statement the day of his arrest.

On May 22, 2017, LCPD Detective Rene Molenda executed a search warrant at the Doña Ana County Detention Center, allowing him to photograph Johnston's person and obtain buccal swabs for forensic examination. Afterwards, Detective Molenda gave Johnston a copy of the warrant. At the suppression hearing, Johnston testified that after he read the search warrant, "[w]hen [Detective Molenda] was walking by, I asked [him] why Jessica Vanderpooten's name was on the search warrant . . . ." Johnston explained the reason he asked is that he "really wanted to know because [he] didn't want her to be arrested for a murder charge." The parties dispute what happened next.

Detective Molenda testified that Johnston's primary concern appeared to question why Vanderpooten's name was listed on the search warrant. He wanted to know whether the search warrant established that she was involved. Detective Molenda testified he explained, "you know, it's -- it's her actual physical residence." While he was explaining, Johnston said, "I wanted to talk to the guys the other day, but I was scared, but I wanted to tell them, I want to talk to them." From that comment, Detective Molenda understood that Johnston referred to the EPPD detectives. He

2

added that Johnston then said he was "there, but that the individual had attacked him." Detective Molenda testified he then said to Johnston, "Hey, . . . I'll let them know that you're willing to talk to them," and he would set up a meeting with those detectives. Contrary to Detective Molenda's testimony, Johnston testified Molenda asked him, "why I was afraid to talk to the cops." Johnston claims he responded by telling Molenda he was "not afraid to talk to the detectives, I just wanted to do it with a lawyer present." Based on this conversation, Molenda further testified he arranged another meeting between Johnston and EPPD detectives. Detective Molenda and EPPD detectives met with Johnston on May 24. No attorney was present. Johnston's recorded statement (State's Exhibit 4) and its written transcript (State's Exhibit 4A) were admitted into evidence at the hearing.[2]

At the start of the interview, the following exchange occurred:

DET. [MOLENDA]: Okay. Again, I'm detective [Molenda] with the Cruces Police Department here. We did the search warrant with you the other day.

MR. JOHNSTON: Yeah.

DET. [MOLENDA]: And briefly, I talked to you. We did some photographs and stuff and some injuries, noninjuries, just overall photographs of you. During the process of talking with you, letting you read the paperwork, you had a couple of questions, correct?

MR. JOHNSTON: Yeah.

DET. [MOLENDA]: And I think--did I clarify those for you?

MR. JOHNSTON: Yeah, you clarified them pretty well.

DET. [MOLENDA]: Okay. And then during that process, you stated that you wanted to provide some information as far as what actually occurred. Basically, it's your side, all right?

---

[2] From our review of State's Exhibit 4, it appears that State's Exhibit 4A misidentified Detective Molenda with Detective Galindo.

MR. JOHNSTON: Yeah.

DET. [MOLENDA]: Okay. I advised you that, you know, in doing so, I would contact these guys. We could bring you up. But basically, it would be under your Miranda and your own free will, wishing to talk to them?

MR. JOHNSTON: Yeah.

DET. [MOLENDA]: Is that correct?

MR. JOHNSTON: Yeah.

DET. [MOLENDA]: You still stand by that same position?

MR. JOHNSTON: Uh-huh.

Detectives Garcia and Hernandez of the EPPD then took over the interview and began by reading Johnston his Miranda rights. At the conclusion of the reading, Detective Garcia asked Johnston whether it was true and correct that he understood his rights, and he knowingly and voluntarily waived his rights. Johnston responded, "It is true and correct." Johnston subsequently gave a statement incriminating himself in the murder of Tyler Croke.

An El Paso County, Texas grand jury indicted Johnston for capital murder on August 8, 2017. TEX. PENAL CODE ANN. § 19.03(a). Johnston moved to suppress his May 24 statement arguing it was obtained in violation of *Edwards*. After hearing evidence, the trial court issued an order denying defendant's motion to suppress. First, the trial court found that Johnston had properly and effectively invoked his right to counsel. Second, it indicated it found that defendant's rendition of facts in its reply brief filed February 19, 2019, was accurate. Third, however, the trial court found from Johnston's "truthful demeanor on the stand," wherein he admitted that he had not been coerced, or threatened, or promised anything, that he had effectively and knowingly waived his rights nonetheless.

4

After that ruling, Johnston pled guilty to the lesser-included offense of murder on December 12, 2019. TEX. PENAL CODE ANN. § 19.02(a). The trial court sentenced him to life in prison. Johnston's plea agreement gives him a limited right to appeal the trial court's denial of his motion to suppress. This appeal followed.

## DISCUSSION

### *Issue*

In a single issue, Johnston asserts he invoked the right to have counsel present on his first and second encounter with police detectives, May 19, 2017, and May 22, 2017, respectively, and accordingly, the subsequent interrogation of him on May 24, 2017, violated his right to counsel.

### *Standard of Review*

We review a ruling on a motion to suppress using a bifurcated standard of review. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87–91 (Tex. Crim. App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex. App.—El Paso 2007, no pet.). We afford almost total deference to the trial court's findings of historical fact, when supported by the record, as well as to mixed questions of law and fact, if the issue involved turns on an assessment of a witness's credibility or demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004); *Guzman*, 955 S.W.2d at 89. "We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case." *State v.*

*Iduarte*, 268 S.W.3d 544, 548–49 (Tex. Crim. App. 2008); *see also State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

### *Applicable Law*

Before a custodial interrogation begins, an accused must be advised he has the right to consult with an attorney prior to questioning or have counsel present during questioning if so desired. *Miranda v. Arizona*, 384 U.S. 436, 467–70 (1966). Interrogation must cease immediately if a suspect invokes the right to counsel. *Id.* at 474. An accused can invoke his right in any manner but it must be clearly asserted. *Russel v. State*, 727 S.W.2d 573, 575 (Tex. Crim. App. 1987). An ambiguous or equivocal statement concerning counsel does not require officers to seek clarification, much less halt their interrogation. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). Whether the mention of a lawyer constitutes an explicit invocation of the right to counsel will depend upon the statement itself and the totality of the surrounding circumstances. *Id.* at 892–93. The test is an objective one: the suspect "must articulate his desire to have counsel present sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* (quoting *Davis v. State*, 512 U.S. 452, 458–59 (1994)).

In *Edwards v. Arizona*, the Supreme Court set out a bright-line rule designed to protect a suspect in police custody that has invoked his right to counsel from being badgered by the police. 451 U.S. at 484; *see also Cross v. State*, 144 S.W.3d 521, 526 (Tex. Crim. App. 2004). Under *Edwards,* an accused who has invoked his right to have an attorney present "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused

6

himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85. The Supreme Court clarified the *Edwards* rule in *Oregon v. Bradshaw*, by establishing a two-step procedure to determine whether a suspect has waived a previously invoked right to counsel. 462 U.S. 1039, 1043–46 (1983); *Cross*, 144 S.W.3d at 526–27. The first step requires proof the suspect himself initiated further communication with the authorities after invoking the right to counsel. *Bradshaw*, 462 U.S. at 1044; *Cross*, 144 S.W.3d at 526–27. The second step requires proof that the suspect validly waived the right to counsel. *Bradshaw*, 462 U.S. at 1046; *Cross*, 144 S.W.3d at 526–27. The Court of Criminal Appeals described a suspect's invocation of his right to counsel as "a protective *Edwards* bubble" that only the suspect himself can burst by his conduct. *Cross*, 144 S.W.3d at 529. The required conduct resulting in a waiver of the right to counsel is more fully expressed in *Cross* as follows:

> A suspect's invocation of his right to counsel acts like a protective *Edwards* bubble, insulating him from any further police-initiated questioning. Only the suspect himself can burst that bubble by both initiating communications with police and expressly waiving his right to counsel. Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.

*Id.*

### *Analysis*

### *Step One: Bursting the Edwards Bubble*

The parties agree Johnston unambiguously invoked his right to counsel when EPPD detectives approached him on May 19, 2017. Consequently, the *Edwards* bubble insulated him from further police questioning unless he himself burst the bubble by initiating communication

7

and expressly waiving his right to counsel. *Id*. As a result, the critical inquiry here is whether law enforcement interrogated Johnston without him bursting the protective *Edwards* bubble.

Johnston asserts he was interrogated by Detective Molenda on May 22 at the moment when he was presented with a copy of the search warrant. Johnston does not cite any authority or case law, and we are not aware of any, that holds that the act of providing a suspect with a copy of a search warrant or other legal document would constitute an interrogation. While there may be circumstances in which the service of legal documents is accompanied by coercive police tactics designed to encourage a suspect to reopen an interrogation, there is no evidence of that conduct in this case nor does Johnston assert otherwise. The record shows Detective Molenda provided Johnston with the search warrant for his review upon his request. Absent aggravating factors, we decline to hold that serving a suspect with a search warrant constitutes an interrogation.

Johnston initiated his next contact with law enforcement. Both Johnston and Molenda testified during the motion to suppress hearing that, after the search warrant was executed on May 22, Johnston stopped Detective Molenda to ask him why Jessica Vanderpooten's name appeared within the document. Johnston argues this contact initiated by him did not in fact reinitiate conversation with law enforcement for purposes of bursting the *Edwards* bubble. We disagree.

In *Bradshaw*, the United States Supreme Court determined what it means for a suspect to "initiate" discussion following an invocation of the right to counsel. *Bradshaw*, 462 U.S. at 1045–46. A majority of the justices held the suspect in the case before it reinitiated contact where he asked a question that "evinced a willingness and a desire for a generalized discussion about the investigation," and not merely "a necessary inquiry arising out of the incidents of the custodial relationship." *Id.* Similarly, the Court of Criminal Appeals has held that a suspect burst the

8

*Edwards* bubble with a "re-initiation of communications about the investigation." *Cross*, 144 S.W.3d at 525, 528 (finding the appellant did not want to talk to the patrol officer but he did want to talk with a detective about the assault).

Here, Johnston's communication with Molenda was also "about the investigation." He testified at the motion to suppress hearing that he asked about Jessica Vanderpooten's name being on the search warrant because "[he] didn't want her to be arrested for a murder charge." Johnston's contact with Molenda, therefore, burst the *Edwards* bubble as his remark reinitiated communication about the investigation. *See Cross*, 144 S.W.3d at 528. As a result, Detective Molenda was free to reinitiate further communication with Johnston. *Id.* at 529 ("Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.").

Even if his contact with Detective Molenda did burst the *Edwards* bubble, Johnston still claims that he re-invoked his right to counsel by his subsequent statements on May 22. On this score, Johnston is correct that he could have once again invoked his right to counsel, but he had to do so in an unambiguous way. *See Cross*, 144 S.W.3d at 529; *Russel,* 727 S.W.2d at 575. Instead, Johnston testified that Detective Molenda asked him why he was afraid to talk to the police or detectives, and he responded, "I wasn't afraid to talk to the police, I just wanted to do it with a lawyer present." Even if we assume the statement is true, Johnston, who had just burst the *Edwards* bubble, had merely described what he had meant when he had been approached three days earlier, on May 19. Yet, nothing in the record indicates that Johnston told Detective Molenda he wanted an attorney present on May 22. And nothing in the record shows Johnston told the detectives he

wanted an attorney present on May 24. As a result, based on the totality of the circumstances, we conclude that Johnston failed to clearly and unambiguously re-invoke his right to counsel. *See Gobert*, 275 S.W.3d at 892.

*Step Two: Waiver of Right to Counsel*

Since there was no violation of the *Edwards* rule, the next inquiry is "whether a valid waiver of the right to counsel and the right to silence had occurred." *Bradshaw*, 462 U.S. at 1046. The EPPD detectives started the May 24 interview of Johnston by reading him his *Miranda* rights, which Johnston waived. Further, Johnston testified at the motion to suppress hearing he was not threatened or coerced by the police, and he fully understood his *Miranda* rights before he waived them. As a result, the record reflects Johnston understood and validly waived his right to counsel. *See Torres v. State*, 543 S.W.3d 404, 414 (Tex. App.—El Paso 2018, pet. ref'd) (finding the defendant voluntarily waived his rights when there was no evidence of coercion, defendant replied "Yes" after being warned, and he never asked for the interview to be terminated or otherwise invoked his right to counsel through the duration of the interview).

**CONCLUSION**

Finding no error, we affirm.


GINA M. PALAFOX, Justice

June 22, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

10